Raymond Carl BROWN and Leonard Frank Hogue, Appellants,

v.

UNITED STATES of America, Appellee.

No. 15548.

United States Court of Appeals Fifth Circuit.

Dec. 23, 1955.

Rehearing Denied Feb. 21, 1956.

No appearance for appellant.

Lonny F. Zwiener, Asst. U. S. Atty., Austin, Tex., Russell B. Wine, U. S. Atty., San Antonio, Tex., for appellee.

Before HOLMES, RIVES, and CAMERON, Circuit Judges.

RIVES, Circuit Judge.

Appellants, Brown and Hogue, along with two co-defendants, Snyder and Rule, were charged in a two-count indictment with: (1) feloniously entering the First National Bank of Streetman, Texas, the deposits of which were at the time insured by the Federal Deposit Insurance Corporation, with intent to commit larceny in said bank in violation of Title 18, United States Code, § 2113(a); and (2) feloniously taking and carrying away from said Bank $1,600.00, in violation of § 2113(b) of the same Title. The jury found each defendant guilty under each count. The court sentenced Snyder and Rule each to imprisonment for five years, and they did not appeal. Brown and Hogue were each sentenced to imprisonment for fifteen years and they appeal.

The indictment follows substantially the language of the statute; it is not duplicitous in charging four defendants in one indictment. Rule 8(b), Federal Rules of Criminal Procedure, 18 U.S.C.A. It was not necessary to charge that the specific property alleged to have been stolen was insured by the Federal Deposit Insurance Corporation; it sufficed to allege that the deposits of the bank were so insured. 18 U.S.C.A. § 2113(f). The motion to dismiss the indictment and each count thereof was properly overruled.

Likewise, most of the other specifications of error deserve only brief mention. The motion for severance was made not by appellants but by their co-defendants, Snyder and Rule. Further, it was addressed to the sound discretion of the district court, and no abuse of discretion appears. See Schaffer v. United States, 5 Cir., 221 F.2d 17, 19. The denial of a continuance, also was within the sound discretion of the district court. Isaacs v. United States, 159 U.S. 487, 16 S.Ct. 51, 40 L.Ed. 229; Ladner v. United States, 5 Cir., 168 F.2d 771, as was the action of the court in excusing Government witness Mac Williams from the rule. Bostwick v. United States, 5 Cir., 218 F.2d 790, 792. We find only one instance where the court refused the request of appellants' counsel to have the record checked to settle differences in recollection of the testimony and then the court stated: "Gentlemen of the jury, you heard the evidence. I will let you pass on it," and later charged the jury: "You are the exclusive judges of the facts proven, of the credibility of the witnesses, and the weight to be given to their testimony". A careful reading and study of the entire record convinces us that appellants' general complaint that, "The court showed prejudice in all its rulings and on several occasions during the hearing and also the trial" is wholly unfounded, and that, to the contrary, the able and experienced district judge conducted the trial patiently, fairly, impartially, and with full recognition of his duty both to the defendants and to the Government. We apprehend that such a charge would not be made if the appellants on this appeal were represented by counsel. The only specifications of error meriting serious consideration is that the district court erred in failing to suppress the testimony of the witnesses as to the confessions made by the appellants.

The corpus delicti was proved by undisputed evidence. On the night of August 3, 1954, the bank was burglarized and about $1,600.00 in money stolen therefrom, in addition to certain checks,

war bonds and jewelry. A number of other burglaries of various nearby places, including the Post Office and The Red and White Grocery Store in Hutto, Texas, were committed during the same general period of time. From the grocery store a large number of cans of coffee were stolen.

Within weeks, the State officers arrested two women who were attempting to sell some of this stolen coffee. From those women they obtained information leading to the arrest of the appellants and their co-defendants; though, it may be noted, the women were not introduced as witnesses. Brown and Snyder heard through their lawyer that the Sheriff in Dallas had a warrant for their arrest, and voluntarily turned themselves in on the 18th of August, 1954. That evening they were taken to Georgetown, Texas on the local charges. There they were interviewed by Sheriff Allen and Texas Ranger White. One of the women under arrest was Brown's ex-wife, and the other was the wife of a friend of his, then in the Oklahoma Penitentiary. Brown wanted very much to have those women released and claims that he made a deal to that end, to confess to the burglary of the grocery store and exonerate the women. The officers deny a deal of any kind, though they admit that, following Brown's confession, the women were released. Brown was the first one of the four co-defendants to give a confession and that occurred on the morning of the nineteenth, the confession including four local burglaries. His confession to the burglary of the Streetman Bank did not come until the 24th. At the time of his first confession, he made a drawing of a location in the residential section of Dallas where he said some of the stolen groceries were hid. This information was communicated to the Dallas officers but they were unable to locate the goods from the description of the place, and on the 20th, Sheriff Allen and Ranger White took Brown back to Dallas, and there, according to the Ranger, we,

"picked up a stash of coffee up there that was pointed out to us by Brown, that had come out of the Red and White Grocery Store, what he said, at Hutto. We dusted those cans of coffee, and that was pointed out in that stash of approximately 147 cans. What I mean, we put fingerprints, you know, powder on there to bring out some prints. We were able to locate some prints on there. Those cans was brought into Austin and turned over to our latent fingerprint section, whereabouts that Snyder's prints was brought out on one of the cans, and that was on the night of the 20th that the boys— the latent fingerprint section— brought this fingerprint out."

Confronted with that information, Snyder's confession followed. Following Brown's confession to the Streetman Bank burglary on the 24th, he was for the first time taken before a magistrate on the 25th, and was later, sometime in September, turned over to the federal officers. It was stipulated that, "when the four defendants were released to federal custody, they were all taken forthwith before a United States Commissioner."

Hogue was arrested in Dallas, Texas, at about 2:30 A.M. on August 24th, was taken first to Waxahachie, Texas, and placed in the County Jail, and from there moved to Georgetown, where he was interviewed by Sheriff Allen and Ranger White. Late on the night of the 24th, he signed a confession as to participation in local burglaries and the Streetman Bank burglary. The next day, August 25th, he was taken before the committing magistrate, and in September, along with the other defendants, he was turned over to federal custody. Rule was arrested in Waco, Texas on August 31st, was brought to Georgetown, and signed his confessions by two o'clock the following morning. For some time after August 31st, the four defendants were kept together in the same cell in the County jail.

Each of the four defendants repudiated his confession, and testified to the most horrible torture and threats on the

part of Sheriff Allen and Ranger White, conduct which was emphatically denied by the two officers. So far as appears from the evidence, those officers were not acting at the request, express or implied, of the federal authorities, though they did permit the defendants to be interviewed while in the County jail by two Post Office Inspectors and by two agents of the Federal Bureau of Investigation. These federal officers testified that the defendants did not appear nervous or afraid, and that they went over their confessions with them, amplifying them and going into more details. The defendants explained this by testifying that Sheriff Allen and Ranger White had threatened them, and that they were afraid so long as they were in their custody. They all testified that they received no harsh treatment from any of the officers of the federal Government. They remained in federal custody from sometime in September until the motion to suppress the evidence was heard on November 22nd. At no time did they report any brutality or threats on the part of the State officers. Again, they testified that they feared the consequences if they were re-transferred to State custody.

The truth of the confessions is corroborated to some extent by the fact that a wooden ammunition box, and some scattered war bonds, checks and jewelry, taken from the Bank vault, were found by a farmer, Mr. Otis Sykes, sometime during Labor Day week at a location by the side of a highway near a bridge where Hogue and Snyder had told Mr. Kennedy, a special agent of the F. B. I., that they had been thrown from Hogue's automobile subsequent to the burglary.

■ The issue of whether the confessions were voluntary or not could not be proved to a mathematical certainty, but depended upon whether Sheriff Allen and Ranger White or the four defendants were telling the truth. There were no corroborating physical marks on the defendants. They testified to forms of torture which would not leave marks. The testimony of the two State officers is corroborated to some extent by the testimony of the federal officers and by the circumstances which have been recited. The able and careful district judge followed the rule prevailing in the federal courts [1] of first passing on the admissibility of the confessions after a full and fair hearing in the absence of the jury, and of then submitting the issue of voluntariness to the jury for their consideration in determining what credibility, if any, they would accord the confessions.

■ The most serious question is whether, under the McNabb Rule (McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819), admission of the confessions should be denied because obtained before prompt arraignment. This Court has expressed its understanding of the reason for the McNabb Rule as "to abolish unlawful detention by or at the instance of federal officers and to require observance of Rule 5(a) Federal Rules of Criminal Procedure." White v. United States, 5 Cir., 200 F.2d 509, 512, 513. The McNabb Rule is inapplicable when the unlawful detention is by State officers not acting in collaboration with federal officers. Anderson v. United States, 318 U.S. 350, 355, 356, 63 S.Ct. 599, 87 L.Ed. 829; White v. United States, supra; United States v. Harris, 7 Cir., 211 F.2d 656, 660.

Finding no error in the record, the judgments are

Affirmed.

---

1. See Patterson v. United States, 5 Cir., 183 F.2d 687, 689; Schaffer v. United States, 5 Cir., 221 F.2d 17, 21, and authorities cited in those two opinions.