**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Columbus DALTON, Jr., Defendant-
Appellant.**

**No. 71-1934.**

United States Court of Appeals,
Fifth Circuit.

July 14, 1972.

Rehearing and Rehearing En Banc
Denied Aug. 30, 1972.

Certiorari Denied Dec. 11, 1972.
See 93 S.Ct. 570.

John J. C. O'Shea, Lubbock, Tex., for defendant-appellant.

Eldon B. Mahon, U. S. Atty., Charles D. Cabaniss, W. Andrew Barr, Asst. U. S. Attys., Dallas, Tex., for plaintiff-appellee.

Before BELL, GOLDBERG and RONEY, Circuit Judges.

BELL, Circuit Judge:

This appeal is from a conviction on each of four counts of a five count indictment charging appellant and others with the submission of false claims to the Veterans Administration in violation of 18 U.S.C.A. § 287. We affirm.

Appellant was president and chief executive officer of Greenville Aviation, Inc., Greenville, Texas. Also charged in the indictment were Jerry Stafford, an employee of Greenville, Nelson R. Cicchitto, a pilot instructor at Greenville, Joe Bailey Lee, who was enrolled as a student pilot at Greenville but who never received instruction there, and Greenville Aviation, Inc. Cicchitto testified for the government and the charges against him were dismissed. Stafford pleaded guilty to one count and also testified for the government. Lee pleaded guilty to a misdemeanor and also testified for the government. Greenville Aviation was found guilty on four counts and fined $10,000 on each count.

There are nine assignments of error. Four of these regard challenges to the indictment. The remainder concern evidentiary rulings by the court and claims of prejudicial conduct by the court and the government prosecutor.

## I.

Part of the business of Greenville Aviation (Greenville) was to operate a Veterans Administration approved pilot training program. The program offered qualified veterans with a private pilots license or 30 hours of flying experience a subsidy of 90 per cent of the cost of additional flight training. At the completion of a quarter's instruction or at the termination of the entire course, the flight school billed the Veterans Administration for a particular student stating the hours of training received and the cost thereof, all as required by the Veterans Administration. The bill was submitted on a "Quarterly Certificate of Flight Training." Both the flight school and the student were required to certify to the Veterans Administration that the entries on the certificate were true and correct. The certificate, on receipt, was reviewed by the Veterans Administration. Payment was made directly to the student who in turn was to pay the flight school.

It was for his operations under this program that appellant was charged with submitting false claims. These claims were submitted in an attempt to collect for instruction ostensibly given to four different student pilots. The total amount so claimed was $11,530.55.

The government in presenting its case first established by a comparison of the Quarterly Certificates, the daily flight time logs of the aircraft purportedly used for the claimed instruction, and the training tickets signed by the student and his instructor after every lesson, that the hours of instruction claimed could not possibly have been given. Having shown that the Quarterly Certificates were false, the government next presented evidence to establish that appellant was the moving force behind the falsifications. Pilot instructor Dullea testified that Dalton told him that he had "purchased" student Bieber's "GI Bill", and that he would pay Dullea $200 to sign student tickets showing that Bieber had received instruction which was not in fact given.

Pilot instructor Cicchitto testified as to having signed false student tickets for eight different students at the request of Dalton, and that he was paid by

Dalton for doing so. Cicchitto also testified that Dalton asked him to falsify his own pilot log book to correspond to the false student tickets.

Jerry Stafford testified that he falsified student tickets and Quarterly Certificates at Dalton's request. One such certificate was signed by Stafford as student and by Dalton for Greenville. Other false claims prepared by Stafford at Dalton's direction were for the students Joe Bailey Lee and John R. Stafford.

Government witness Donald Russell, at one time an employee of Greenville, testified to having taken flight training from Greenville at a time when he was not eligible for Veterans Administration benefits. Russell then falsely stated his qualifications and received Veterans Administration approval for pilot training. Thereafter Dalton and Russell computed the dollar value of the time Russell had flown and made up a false Quarterly Certificate to the Veterans Administration for that amount.

Several of the witnesses also testified that after the investigation of Greenville had begun, Dalton asked them to meet with his attorney. At these meetings, the witnesses signed affidavits stating that their student flight records were accurate and that Dalton was a busy businessman who did not attend to the details of operating Greenville Aviation. These witnesses thereafter repudiated their affidavits and disclosed that they had signed only to help Dalton or on the assurances of Dalton and his attorney that if they stuck together nothing would come of the investigation.

Dalton's defense consisted of attacks on the accuracy of the company records, attempts to show that Dalton had no day-to-day control of Greenville, and efforts to show that his employees were solely responsible for the false claims

and were trying to place responsibility on him (termed an interior conspiracy).

## II.

Turning to appellant's attacks on the indictment, he first contends that the four counts pertaining to him also charged another individual and a corporation without alleging that the three individuals participated together or acted in concert, or setting forth a common scheme, design and intent to commit the primary offense alleged in each count. It appears that appellant's position is that the indictment was duplicitous as charging more than one offense in the same count. We, however, do not share this view. Rule 8(b), F.R.Crim.P.,[1] provides for the indictment of multiple defendants in the same indictment if they are alleged to have participated in the same act or transaction. The word "participate" is not used in the language of the indictment but the charge is in such terms as to allege participation in the same act or transaction and this was the proof adduced on the trial. Cf. Brown v. United States, 5 Cir., 1955, 228 F.2d 286, 287. This assignment of error is without merit.

Appellant next contends that the grand jury which returned the indictment was invalid because the names of the jurors were not publicly drawn as required by 28 U.S.C.A. § 1864, and the jury selection plan for the Northern District of Texas. There is no merit in this contention. The selection took place in one of the rooms in the clerk's office with only clerk personnel in attendance. However, it was a room which was open to the public. This was not an invalid procedure. Cf. Wilson v. United States, 5 Cir., 1938, 104 F.2d 81; Hammerschmidt v. United States, 6 Cir., 1923, 287 F. 817.

Appellant further contends that the court erred in not quashing or dis-

---

1. Rule 8(b):

   *Joinder of Defendants.* Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

missing the indictment because of an alleged breach of secrecy in the grand jury proceedings. The evidence shows that at the first trial of appellant,[2] a girl friend of appellant testified that a grand jury member for whom she worked revealed to her certain of the proceedings before the grand jury. On retrial however, this witness revealed that her first testimony was false and given only in an attempt to help the appellant. The claim of disclosure is also rebutted by the testimony of the grand juror in question. Thus the court did not err in denying appellant's motion to dismiss the indictment.[3]

■ Finally with respect to dismissing the indictment, we reject the claim of denial of due process and equal protection on the ground that the government accepted pleas from some co-denfendants and granted immunity to another without affording appellant the same treatment. Newman v. United States, 1967, 127 U.S.App.D.C. 263; 382 F.2d 479; United States v. Cox, 5 Cir., 1965, 342 F.2d 167.

### III.

■ In the area of evidentiary rulings, appellant first contends that the court erred in allowing a Veterans Administration investigator to testify on redirect to comments made by appellant regarding certain missing records and his knowledge of the contents of certain documents which he had signed. The government solicited this evidence only to rebut testimony offered by appellant which indicated that he was fully cooperative during the Veterans Administra-

tion investigation.[4] It is urged that these comments to the investigator were incriminating and obtained in violation of appellant's *Miranda* rights. Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The short answer is that *Miranda* is inapplicable for the reason that appellant was not in custody when he made the statements in question. Posey v. United States, 5 Cir., 1969, 416 F.2d 545, 549; Evans v. United States, 5 Cir., 1967, 377 F.2d 535, 536.

■ One defense theory was to try others in an effort to show that appellant was the victim of a frame-up by his employees. (The so-called interior conspiracy). He assigns error with respect to the refusal of the court to allow him to attempt to impeach the prosecution's employee witnesses by showing alleged wrongdoing on the part of those witnesses on other occasions and in unrelated transactions. There was no error in these rulings. Peel v. United United States, 5 Cir., 1969, 410 F.2d 1141.

■ There was also no error in the ruling of the district court which allowed the government to cross-examine one of appellant's character witnesses by probing his knowledge of a previous arrest of appellant. See Michelson v. United States, 1948, 335 U.S. 469, 69 S. Ct. 213, 93 L.Ed. 168.

There is no merit whatever in the contention that the court and also the prosecutor engaged in conduct through remarks and argument which was prejudicial to appellant.

Finding no error, the judgment of conviction should be and it is affirmed.

---

2. A new trial had been granted to appellant after a previous conviction on the same charges.

3. We, of course, do not reach the question whether an indictment should be dismissed on the mere showing that a disclosure occurred. See United States v. Hoffa, 6 Cir., 1965, 349 F.2d 20, where the indictment was not dismissed.

4. Prior to this defense effort, the court had warned defense counsel that the proposed line of questioning would "open the door" for government inquiry along the same line. Cf. Harris v. New York, 1971, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1. We do not reach the government's argument that *Harris* is dispositive.

ON PETITION FOR REHEAHING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.