**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Tommy Ray WELLS and B. C. Wells,
Defendants-Appellants.**

No. 75–2076
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Jan. 12, 1976.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Yoma M. Beaty, Fort Payne, Ala. (Court-appointed), for defendants-appellants.

Wayman G. Sherrer, U. S. Atty., Bill L. Barnett, Asst. U. S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before COLEMAN, AINSWORTH and SIMPSON, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellants, Tommy Ray Wells and B. C. Wells, were convicted at jury trial on multiple counts of knowingly and feloniously receiving, selling, and disposing of stolen motor vehicles moving as a part of interstate commerce in violation of 18 U.S.C. § 2313. After reviewing the various issues raised by their appeal, we conclude that their allegations of error are without merit and that their convictions must be affirmed.

█ Appellants' first contention is that the evidence submitted concerning the identification of two of the stolen vehicles was insufficient to support the convictions. In one case, there was a variance in the evidence with respect to one digit of the stolen truck's vehicle identification number. In the other, the Government's witness testified that he owned the vehicle at the time it was stolen, whereas the documents he submitted to prove ownership showed that title was in the name of his wife. In both cases, however, the stolen vehicles were sufficiently identified. The discrepancy with regard to the final digit of the first truck's vehicle identification number was adequately explained as the result of a paperwork error made by the dealership from which the witness had bought the truck, and there was testimony from the witness who owned the second truck that he had transferred title to his wife after it was stolen and eventually recovered.

█ Appellants next contend that they were prejudiced by an alleged failure of the Government to comply with a pretrial discovery order. The order required that the prosecution produce "all papers and documents in the possession of the United States District Attorney" which the Government "intend[ed] to offer in evidence." The alleged noncompliance consisted of the Government's failure to produce certain vehicle tag re-

ceipts and checks which were introduced during the course of trial. The tag receipts were supplied by subpoena duces tecum at trial, and were not within the scope of the production order since they were not in the Government's possession during the discovery period. They would not have been particularly helpful in any event, since an investigation by a Government witness (an investigator in the Cherokee County, Alabama District Attorney's Office) revealed that the names and addresses on the tag receipts were fictitious. Prior access to the receipts would accordingly have been of little use to the defendants in establishing that individuals other than themselves had ultimately disposed of the vehicles in question. The checks were outside the scope of the production order because they were introduced not as part of the Government's case-in-chief, but as impeachment evidence during the cross-examination of defendant B. C. Wells. We conclude that there was neither noncompliance with the production order nor abuse of discretion in the court's ruling that these items were admissible.

 The next allegation of error concerns the trial court's refusal to admit a tape recording and transcript of a conversation between the defendants' lawyer and the ultimate purchaser of the stolen vehicles, Earble William Ashley. Ashley denied making a statement on that occasion, and the tape recording was apparently secured without his knowledge or consent. The tape and transcript were never identified or authenticated by a witness. Given the facts that the proper foundation for the introduction of these items was not laid, that the circumstances surrounding the procurement of the recording were questionable and the transcription was imperfect, and that the tape and transcript concerned matters outside the scope of the witness' direct examination, the trial court properly sustained the Government's objection to their introduction.

 At trial, Ashley's wife testified that her husband had given B. C. Wells checks for the stolen vehicles, but on cross-examination, it developed that she had no direct knowledge of the transaction, and that her testimony was based on hearsay from her husband. We need not decide whether the court erred in admitting this evidence, inasmuch as the testimony was merely cumulative and in light of the record taken as a whole, any error was harmless. At another juncture in the proceedings, the court sustained objections to questions directed to the wife of B. C. Wells asking whether Ashley's wife had made statements to her that might relate to the charges against Wells. There was an exception taken to the court's ruling sustaining the Government's objection, but no offer of proof. Inasmuch as no suggestion was made at the time that the evidence sought would fall within some exception to the hearsay rule, appellants cannot properly contend now that it was error to sustain Government objections to the questions in issue.

 Finally, appellants contend they were improperly deterred from introducing testimony as to the defendants' good character by a statement made by the trial judge to the effect that the Government would be allowed, during cross-examination of defense character witnesses, to inquire concerning prior arrests, misdemeanors, and the like of the defendants. Appellants argue that the trial judge erred in failing to indicate that he would limit such inquiries to matters involving moral turpitude. This contention is without merit. Once a witness has testified concerning a defendant's good character, it is permissible during cross-examination to attempt to undermine his credibility by asking him whether he has heard of prior misconduct of the defendant which is inconsistent with the witness' direct testimony. See Michelson v. United States, 335 U.S. 469, 479, 69 S.Ct. 213, 220, 93 L.Ed. 168 (1948); United States v. Franklin, 5 Cir., 1973, 471 F.2d 1299, 1301–1302; United States v. Dalton, 5 Cir., 1972, 465 F.2d 32, 35. In Franklin, the contested cross-examination concerned a prior incident

that had not even led to arrest, let alone indictment or conviction; in *Dalton,* cross-examination concerning a prior arrest was involved. Courts have imposed two important limitations upon judicial discretion in admitting inquiries concerning such prior misconduct: first, a requirement that the prosecution have some good-faith factual basis for the incidents inquired about, *see Michelson v. United States, supra,* 335 U.S. at 472, 69 S.Ct. at 216–217; *United States v. West,* 5 Cir., 1972, 460 F.2d 374, 376; *United States v. Beno,* 2 Cir., 1963, 324 F.2d 582, 588; *Roberson v. United States,* 5 Cir., 1956, 237 F.2d 536, 540; and second, a requirement that the incidents inquired about are relevant to the character traits involved at the trial. *See Aaron v. United States,* 5 Cir., 1968, 397 F.2d 584, 585; *Bryan v. United States,* 5 Cir., 1967, 373 F.2d 403, 404 n. 1. In the present case, the trial judge ascertained from counsel out of the presence of the jury that there was a good-faith foundation for the matters that might be brought out in this manner. Moreover, he was careful to assure counsel at that time that if such cross-examination occurred, he would instruct the jury that the line of inquiry could be considered only with regard to its bearing on the credibility of the witness. Since no character witnesses were called, and no such evidence was submitted, there is no basis for an assertion that the trial judge did allow, or would have allowed, prejudicial inquiries concerning irrelevant incidents. We are unaware of any requirement limiting cross-examination of defense character witnesses to matters involving moral turpitude of the defendant.

Affirmed.