UNITED STATES of America,
Plaintiff-Appellee,

v.

Jack Gonzalez EDWARDS and Pasquale
Matassini, Defendants-Appellants.

No. 76–1321.

United States Court of Appeals,
Fifth Circuit.

March 24, 1977.

Rehearing Denied April 29, 1977.

Roy B. Reynolds, Jr., Tampa, Fla. (Court appointed), for Edwards.

Henry Gonzalez, Tampa, Fla., for Matassini.

John L. Briggs, U. S. Atty., Jacksonville, Fla., W. Christian Hoyer, Asst. U. S. Atty., Tampa, Fla., for plaintiff-appellee.

Before GEWIN, GEE and FAY, Circuit Judges.

FAY, Circuit Judge:

Appellants, Pasquale Matassini and Jack Gonzalez Edwards appeal their conviction for conspiracy to possess counterfeit money.[1]

1. 18 U.S.C. §§ 371, 472, 473.

2. Several identical issues were raised and treated separately by both appellants. For pur-

The issues presented by appellants are:[2]

1. Whether the court erred in denying appellants' motions to dismiss or for mistrial on the allegation that a "contingency fee" informer was employed. (Matassini and Edwards)

2. Whether the court erred in denying appellants' motions for severance. (Matassini and Edwards)

3. Whether the court erred in permitting government counsel to cross-examine character witnesses regarding appellant-Matassini's arrest and conviction record. (Matassini)

4. Whether the court erred in denying appellant-Matassini's motion to dismiss or for mistrial for the government's failure to disclose consideration given to an informer/witness. (Matassini)

5. Whether the court erred in restricting cross-examination by counsel regarding illegal activities of a government witness. (Matassini)

6. Whether the evidence was sufficient to sustain the jury verdict. (Matassini and Edwards)

7. Whether the court erred in admitting certain counterfeit money into evidence. (Edwards)

8. Whether the court erred in refusing to read to the jury selected parts of the trial transcript when requested by the jury. (Edwards)

For the reasons stated below we affirm.

During the trial of this case one of the key witnesses for the prosecution was Edward Loocerello. He was indicted with the appellants but on the first day of trial it was announced he would testify for the government in return for dismissal of the charges against him. He testified that in November, 1973, he and Matassini, who were acquaintances of ten or twelve years, met in the Pad Lounge (owned by Matassi-

poses of this opinion we will combine those issues raised by both appellants and so designate above.

ni) in Tampa, Florida. Matassini took Loocerello for a drive in his car, showed Loocerello a $20, a $50, and $100 counterfeit note, and solicited his opinion as to their quality. Loocerello said the bills looked good and, after asking, was told that their price was twenty cents on the dollar. They didn't discuss the amount of counterfeit money available.

The next day Loocerello contacted an individual in El Paso, Texas in hopes of selling any counterfeit money he could purchase from Matassini.

In December, 1973, Loocerello met with Edwards in the Neptune Lounge at which time Edwards asked if Loocerello could use some $20, $50, and $100 counterfeit notes. Loocerello asked if these notes were the same ones Matassini had to which Edwards nodded and smiled, adding that up to one million dollars worth was available at twenty cents on the dollar. Loocerello met Edwards again in January, 1974, while Edwards was in the hospital. He asked Edwards for some samples of the money and, after Edwards made a telephone call, Edwards told Loocerello the money would be arriving from Miami within seventy-two hours.

In mid-January, 1974, Loocerello met a man he thought was his Texas connection at the Jubilee Lounge to discuss the counterfeit deal. The contact was really Agent Woodham of the United States Secret Service. Both Woodham and Loocerello testified that during this meeting Edwards walked in and was then identified by Loocerello as the source of the counterfeit money.

Thomas Wester, a government informer, testified that he had known Matassini for many years and was formerly Matassini's supervisor at a bowling lane in Tampa. In late November, 1973, Wester was approached by Matassini at the Pad Lounge and was shown a counterfeit $20, $50, and $100 federal reserve note by Matassini. Matassini stated there was $920,000 available. The next day Wester took the bills to agents of the Secret Service who copied down the serial numbers and returned them to Wester. At that meeting Wester refused to divulge the identity of his source except that he was a bar owner. Wester also requested five percent (5%) of anything seized for a reward. The agents told him that was unreasonable and the Secret Service did not as a practice enter into agreements with informants for a percentage. No agreement was made as to any reward. At a second meeting, the next night, Wester gave the agents Matassini's name and asked again about a reward. He was told it depended on the "final results" and Agent Williams explained that it would depend upon the results of whatever buy he was able to make or whatever amount of money they were able to seize. Still no agreement was reached and Wester never received any money for this case from the Secret Service.

Wester continued in his attempts to make a deal with Matassini and in January, 1974, Matassini gave Wester a bar tab with some telephone numbers on it and directed Wester to call the numbers. The four telephone numbers were to Edwards' house in Tampa, where Edwards could be reached in Ft. Lauderdale, Florida, and Edwards' father's law office. According to Wester, Matassini wrote four digits of one number in his presence.

Wester also testified he called Edwards' home number, talked with Edwards' mother and found out Edwards was in the hospital. He went to the hospital that day, met with Edwards and arranged a meeting between Matassini and himself so Matassini could introduce Wester to Edwards. That night a meeting took place at the Pad Lounge and Matassini made the introduction. Wester and Edwards talked about the counterfeit money, in particular, price, quality and quantity. Edwards agreed to get in touch with his contact to work out further details. A price of twenty to twenty-five percent was quoted.

A week or so later Wester saw Loocerello, who he had met in mid-December, 1973, through Matassini, at the Pad Lounge and

Loocerello then identified Edwards as his source of counterfeit money. Loocerello took Wester to the airport where Wester was to leave with Edwards for Fort Lauderdale.

Richard Taylor, identified as an unindicted co-conspirator, testified that he bought one million dollars in counterfeit money for twenty thousand dollars in October, 1973. He was arrested in December, 1973, and the money was seized. His arrest was not disclosed for several weeks. The amount seized was $886,960 in $20, $50, and $100 counterfeit federal reserve notes, each denomination having twenty different serial numbers, one of which matched each of the serial numbers of the three notes given to Wester by Matassini. All the money, from both Taylor and Matassini was found to be from the same printer, press and paper.

■ The first point on appeal is based on the doctrine set forth in *Williamson v. United States*, 311 F.2d 441 (5th Cir. 1962), concerning contingent fee informers. Both Matassini and Edwards suggest that their convictions should be reversed because Thomas Wester had a contingent fee agreement with the Secret Service to produce evidence against appellants. We do not agree.

In *Williamson*, an informant was offered a specific sum of money for evidence against certain individuals. At the time of the offer to the informant, no evidence against the target individuals had been gathered.

The evidence in this case does not establish a contingent fee arrangement like the one condemned in *Williamson*. Viewing the evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), there was no specific arrangement between Wester and the Secret Service agents. The failure to agree to Wester's request for a percentage of money seized and the fact that neither Matassini nor Edwards were known to the Secret Service before Wester came to them with the information of the alleged conspiracy prevents this case from coming within the ambit of *Williamson*. The only probative evidence of a possible contingent fee arrangement is Agent Williams' statement that a reward depended on the "final results" and we find this is not sufficient to bring this case within the *Williamson* doctrine. See *United State v. Dickens*, 524 F.2d 441 (5th Cir. 1975). This court has

> refused to extend [Williamson] . . . to the situation where an informant is paid a subsistence allowance and given a reward, as long as there is no evidence that he had been promised a specific sum to convict a particular person. (Citations omitted).

*United States v. Garcia*, 528 F.2d 580, 586 (5th Cir. 1976).

For the second issue, both appellants suggest the district court's denial of a severance was prejudicial to them but each for entirely different reasons. We must determine in each case whether there was sufficient prejudice to require a severance under Rule 14 of the Federal Rules of Criminal Procedure.[3]

> The existence of prejudice, in large measure, depends upon the facts and circumstances of each case . . . and it is axiomatic that the granting of a severance is within the discretion of the trial judge. [Citations omitted] The burden of demonstrating prejudice is a difficult one, and the ruling of the trial judge will rarely be disturbed on review. [Citations omitted][4]

■ Appellant Edwards suggests severance was mandatory because he was irreparably prejudiced by Matassini testifying

---

**3.** If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants . . . by such joinder for trial together, the court may order an election or separate trial of counts, grant a severance of defendants or provide whatever other relief justice requires.

**4.** *Tillman v. United States*, 406 F.2d 930, 934,

and being impeached by a prior conviction.[5] Matassini's testifying and his impeachment by prior conviction did not prejudice Edwards' case in any way and any possible misunderstanding of this testimony by the jury was explained by the court's instructions. See *Blumenthal v. United States*, 332 U.S. 539, 559–560, 68 S.Ct. 248, 92 L.Ed. 154 (1947); *United States v. Perez*, 489 F.2d 51, 66 (5th Cir. 1973).

Appellant Matassini's claim for severance was based on the desire of Jack Edwards to testify on Matassini's behalf but not if Edwards' own guilt was the subject of the jury's consideration. Matassini suggests he meets the criteria set out in *Byrd v. Wainwright*, 428 F.2d 1017 (5th Cir. 1970), as a basis for the necessity of a severance. The criteria in *Byrd*, even though a state habeas corpus case, have been used to guide trial judges confronted with motions for severance here in this circuit. *United States v. Martinez*, 486 F.2d 15 (5th Cir. 1973); *United States v. Diez*, 515 F.2d 892 (5th Cir. 1975). Those guidelines are: (i) the co-defendant's testimony must be specifically shown to be exculpatory; (ii) the movant must show a substantial likelihood that the co-defendant will testify if the severance is granted; and (iii) the movant must show a bona fide desire to use the co-defendant's testimony.

■ Edwards proffered his testimony on direct examination to the court. The proffer and the filing of the motion for severance both took place *after* the government had rested its case. The court below denied the motion because the testimony was not exculpatory as to Matassini as required by *Byrd* and the motion itself was untimely. On the basis of *United States v. Morrow*, 537 F.2d 120 (5th Cir. 1976), we find that the trial judge properly used his discretion in deciding whether the testimony was exculpatory. In *Morrow*, Judge Thornberry states:

> The trial judge is expressly empowered to examine the significance of the alleged

exculpatory testimony in relation to the defensive theories relied upon and assess the extent to which the defendant will be prejudiced by the absence of the testimony. (Footnote omitted) Moreover, close attention to the interest in judicial economy is a permissible consideration in the trial judge's exercise of discretion. (Footnote omitted).

*Supra*, p. 135.

■ After reviewing the proffered testimony of Edwards we believe the trial judge was correct in finding that the testimony was not sufficiently exculpatory to require a severance. For example, although Edwards personally denied speaking with Matassini concerning counterfeit money, his testimony did nothing to counter Matassini's dealings with Wester and Loocerello.

The trial judge considered the timeliness of the motion and found that since the motion for severance was made after the government had rested its case following three days of trial, the motion was untimely. *United States v. Diez*, 515 F.2d 892, 903 (5th Cir. 1975). This court does not find an abuse of discretion in this decision.

■ The third assignment of error is whether cross-examination of a character witness for Matassini about his knowledge of a prior conviction and arrests of Matassini was proper.

Matassini called character witnesses, among them Dr. Joseph Ferrandes, a dentist, who testified he has known Matassini both socially and professionally for more than twenty years and Matassini, in his opinion is a truthful, honest and law abiding citizen. On cross-examination the government asked him if he had heard about Matassini's conviction for breaking and entering petit larceny and possession of burglary tools and also Matassini's arrests for assault and battery in 1956, 1961, 1970 and 1972. The witness was aware of all except the last three arrests.

---

935 (5th Cir. 1969). See also *United States v. Park*, 531 F.2d 754 (5th Cir. 1976).

**5.** Edwards also raised another ground but withdrew it during oral argument of this appeal.

In the Federal Rules of Evidence, Rule 405(a) states:

*Reputation or opinion.* In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

The Advisory Committee's Note on Rule 405, Federal Rules of Evidence cites *Michelson v. United States,* 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948),

[wherein] cross-examination inquiry [was ] allowable [to find] whether the reputation witness [had] heard of particular instances of conduct pertinent to the trait in question.[6]

This court held in *United States v. Wells,* 525 F.2d 974 (5th Cir. 1976), (citing *Michelson* ), that

Once a witness has testified concerning a defendant's good character, it is permissible during cross-examination to attempt to undermine his credibility by asking him whether he has heard of prior misconduct of the defendant which is inconsistent with the witness' direct testimony. (Citations omitted).

Supra, p. 976. *Wells* put two limitations on judicial discretion:

. . . first, a requirement that the prosecution have some good faith factual basis for the incidents inquired about (citations omitted); and second, a requirement that the incidents inquired about are relevant to the character traits involved at the trial. (Citations omitted).

Supra, p. 977. *Wells* does not limit these instances of misconduct to just convictions; it also includes arrests.

In this case the trial judge exercised his discretion and allowed cross-examination as to the 1950 conviction and arrests, weighing the relevancy of the evidence as opposed to prejudice to the defendant. Appellant argues that Rule 609(b), F.R.E., which places a ten year limitation on the time within which evidence of a conviction may be used to impeach a witness, should be read in conjunction with Rule 405(a), F.R.E. We cannot agree. Allowing evidence of convictions under Rule 609(b) is meant to impeach the witness with respect to *his* truth and veracity and also the limiting of the time for use of convictions allows for rehabilitation of that witness. But allowing cross-examination of character witnesses as to their having heard of prior convictions or arrests of a defendant shows whether he has knowledge of defendant's reputation and whether that knowledge influences his opinion in any way.

Therefore we find the trial judge did not abuse his discretion and we affirm this decision.

The fourth assignment of error is based on the government's alleged failure to disclose consideration given to witnesses. After a careful reading of the record this court finds that the government disclosed to the defendants the consideration given to Loocerello and Wester and this contention is totally without merit.

In the fifth assignment of error Matassini suggests under Rule 608 of the Federal Rules of Evidence the court improperly restricted cross-examination by counsel for appellant regarding illegal activities of a government witness. From the record in this case we note appellant has misinterpreted this rule.

Appellant called witnesses to testify to the bad character of two prosecution witnesses and was prohibited by the court from inquiring on direct and re-direct examination as to specific acts of the prosecutions' witnesses. Rule 608(b) of the Federal Rules of Evidence states:

*(b) Specific instances of conduct.* Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may *not* be proved by extrinsic evidence. They may, however, in the discretion of the

---

6. Advisory Committee's Note, Rule 405, Federal Rules of Evidence.

court, if probative of truthfulness or untruthfulness, be inquired into on *cross-examination* of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified. (Emphasis added)

It should be clear from the statement of the rule itself that appellant was attempting to bring out on direct examination of his own witness (instead of cross-examination) specific instances of conduct by extrinsic evidence which is specifically prohibited by the rule. The exception does not apply in this case and appellant's argument has no merit.

 Appellants also allege there was insufficient evidence to support their convictions. We view the evidence in the light most favorable to the government[7] and must decide whether reasonable jurors could find the evidence, be it direct or circumstantial, inconsistent with every hypothesis of innocence.[8] After reviewing the record we find there was ample evidence to support appellants' convictions on the conspiracy charge.

All other claims of error have been considered and rejected, being totally without merit. We affirm the conviction of both appellants.

---

**7.** *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Leslie,* 542 F.2d 285 (5th Cir. 1976); *United States v. Rojas,* 537 F.2d 216 (5th Cir. 1976).

**8.** *United States v. Rojas,* 537 F.2d 216 (5th Cir. 1976); *United States v. Moore,* 505 F.2d 620, 623 (5th Cir. 1974), *cert. denied,* 421 U.S. 918, 95 S.Ct. 1581, 43 L.Ed.2d 785 (1975); *United States v. Nazien,* 504 F.2d 394, 395 (5th Cir. 1974), *cert. denied,* 420 U.S. 964, 95 S.Ct. 1358, 43 L.Ed.2d 443 (1975).