# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 14, 2009

Charles R. Fulbruge III
Clerk

No. 08-50563

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

MANUEL MUNIZ,

Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:07-CR-172-3

Before DAVIS, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Manuel Muniz appeals the district court's evidentiary rulings involved in his conviction for conspiracy to possess with intent to distribute methamphetamine and conspiracy to possess with intent to distribute cocaine. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

**I**

Muniz and eight other co-defendants were indicted for conspiracy to possess with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. The indictment alleged that the conspiracy existed from June 2005 until the date of the indictment. Subsequent to the first indictment, the Government obtained a superseding indictment against Muniz only. This indictment charged him with conspiracy to possess with intent to distribute 500 grams of cocaine and 500 grams of methamphetamine and amended the period of conspiracy from an unknown date in 2000 to October 4, 2007, the date Muniz was arrested.

Before trial, Muniz filed a motion to suppress evidence of cocaine possession collected during a 2001 traffic stop on the ground that the search was conducted in violation of his Fourth Amendment rights. Muniz also filed a motion to suppress evidence collected during a March 12, 2007 search of his home on the ground that the search warrant was not supported by probable cause. The district court held an evidentiary hearing and denied both motions.

At trial, the prosecution called six of Muniz's alleged co-conspirators. Three of them had been indicted in federal court (Mark Copeland, Danny Walton and Andrew Harris) and two in state court (Aaron Condron and Christopher Appleton). The sixth, Chad Regeon, was an unindicted co-conspirator cooperating with the investigation.

Five of the six witnesses testified that Muniz sold them methamphetamine or cocaine. Copeland testified that he bought small amounts of cocaine twice from Muniz and a small amount of methamphetamine once. Walton testified that he purchased a total of between one and one-and-one-half ounces of methamphetamine from Muniz between November 2006 and January 2007. Condron testified that he bought cocaine from Muniz until 2001 and methamphetamine after Muniz returned from Iraq in 2005. Regeon and

Appleton likewise testified that they purchased both cocaine and methamphetamine frequently.

Several cooperating witnesses also testified that they went with Muniz to Austin to purchase methamphetamines from his supplier. Regeon testified that he was with Muniz in Austin when Muniz closed a drug deal, although he did not actually see the transaction occur. Regeon also claimed that Muniz told him that on a trip the previous week, Muniz had tossed drugs wrapped in camouflage out of the car because he believed a traffic stop was imminent. Regeon claimed he and Muniz searched for the drugs on their way home from Austin.

The Government also called six law-enforcement officers, including Special Agent Raymond Rivera, Officer Ty Tully of the McCulloch County Sheriff's Department, and Lieutenant Brian Baxter. Rivera testified that he drove Muniz to Austin after he was arrested in Brady and that, during the drive, he heard Muniz state that Muniz knew he was being investigated and was the target of a conspiracy case and that Muniz had someone checking for warrants. Officer Tully testified to conducting a traffic stop of Muniz in 2001 during which Tully discovered Muniz with five to six grams of cocaine, a small scale, and other miscellaneous items. Muniz was arrested and charged with possession of cocaine in Texas state court, but the charge was later dismissed. Officer Baxter, who coordinated the investigation, chiefly testified about the fruits of the March 12, 2007 search of Muniz's home. The search recovered evidence such as small ziploc baggies, a manual for a digital scale, a military notebook containing names and phone numbers of people Baxter was investigating, checks showing cash withdrawals of $12,500, a letter from Muniz's mom cautioning him about getting a lawyer, various firearms, and an alleged "cutting agent" (a whitish powder or crystalline substance).

Muniz called six witnesses at trial. Four of these witnesses were National Guard soldiers who served with Muniz in Iraq or participated in weekend

training with him. They testified that they did not see Muniz use drugs in Iraq or in training for deployment. Muniz also called Eric Ortega, his best friend, and Kayla Guajardo, his girlfriend. Both said they had never seen Muniz use or deal drugs. The Government then cross-examined Ortega and Guajardo concerning Muniz's prior arrests for assault, DWI, and evading arrest, among others. The district court overruled Muniz's objection to the cross-examination of Ortega but Muniz did not renew his objection during the questioning of Guajardo.

A jury convicted Muniz of conspiracy and the court sentenced Muniz to 235 months imprisonment. Muniz timely appealed.

## II

When reviewing the denial of a motion to suppress, this court reviews findings of fact for clear error and conclusions of law de novo.[1] We consider all the evidence at trial, "not just that presented before the ruling on the suppression motion, in the light most favorable to the prevailing party."[2]

## A

Muniz argues that the district court erred when it denied his motion to suppress the evidence of the 2001 traffic stop. Traffic stops are analyzed under the framework set forth by the Supreme Court in *Terry v. Ohio*.[3] Under *Terry*, to comply with the Fourth Amendment, an officer's action at a traffic stop must (1) be justified at its inception and (2) reasonably relate in scope to the circumstances which justified the stop.[4] Regarding the second prong, this court has previously held that a detention may not exceed the scope of the initial stop

---

[1] *United States v. Brigham*, 382 F.3d 500, 506 n.2 (5th Cir. 2004) (en banc).

[2] *United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007).

[3] 392 U.S. 1 (1968).

[4] *Id*. at 19-20.

unless additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled.[5]

Muniz concedes that Officer Tully's initial stop was a valid traffic stop for failure to properly signal a lane change but argues that Tully's subsequent questioning after the purpose of the traffic stop ended was an unreasonable detention. The district court determined that Officer Tully's questioning of Muniz occurred during a consensual encounter and that the Fourth Amendment did not apply. A district court's determination that an exchange with a police officer constitutes a consensual encounter, rather than a seizure implicating Fourth Amendment protections, is a factual finding reversible only for clear error.[6]

After Officer Tully completed the warrants check and issued a warning citation, he gave Muniz back his driver's license. At this point, a reasonable person would believe that the traffic stop had ended and that he would be free to terminate the encounter.[7] Contrary to Muniz's contention, Officer Tully was not required to inform Muniz that the legal detention had concluded.[8] Although Officer Tully thereafter immediately began to question Muniz to "take consent or develop reasonable suspicion," this follow-on questioning did not change the

---

[5] *United States v. Jenson*, 462 F.3d 399, 404 (5th Cir. 2006).

[6] *United States v. Mask*, 330 F.3d 330, 334, 337 (5th Cir. 2003).

[7] *See United States v. Sanchez-Pena*, 336 F.3d 431, 441 (5th Cir. 2003) ("So long as 'a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter,' it is consensual." (quoting *United States v. Drayton*, 536 U.S. 194, 202 (2002))).

[8] *United States v. Brown*, 102 F.3d 1390, 1394-97 (5th Cir. 1996); *see also Ohio v. Robinette*, 519 U.S. 33, 39-40 (1996) (holding that a rule requiring an officer to inform detainees that they are free to go before a consent to search is deemed voluntary was inappropriate and that instead "the proper inquiry necessitates a consideration of all the circumstances surrounding the encounter" (citation and internal quotation marks omitted)).

consensual encounter into an illegal detention.[9] The district court did not clearly err in its determination that the post-*Terry*-stop questioning was a consensual encounter.

Muniz argues that our previous decisions in *United States v. Jenson*,[10] *United States v. Santiago*,[11] *United States v. Jones*,[12] and *United States v. Dortch*[13] require a different conclusion. But in each of these cases, the officers failed to return a driver's license taken in furtherance of the initial stop.[14] Additionally, in each case the officers involved began their initial questioning of the defendants before the traffic stop was complete and continued the same line of questioning after the purpose for the initial traffic stop had been fulfilled.[15] In contrast, Officer Tully returned all of Muniz's paperwork, including his driver's license, and did not begin asking questions concerning suspected narcotics activity until after the initial *Terry* stop had ended. Therefore, unlike in Muniz's cited cases, Officer Tully's questioning and subsequent consensual search did not illegally prolong the initial *Terry* stop.

Based on our conclusion that the questioning was not part of an illegal detainment but rather a consensual encounter, we need only determine whether Muniz voluntarily consented to the search of his person and vehicle. The

---

[9] *See Sanchez-Pena*, 336 F.3d at 443.

[10] 462 F.3d 399 (5th Cir. 2006).

[11] 310 F.3d 336 (5th Cir. 2002).

[12] 234 F.3d 234 (5th Cir. 2000).

[13] 199 F.3d 193 (5th Cir. 1999).

[14] *See Jenson*, 462 F.3d at 407; *Santiago*, 310 F.3d at 343; *Jones*, 234 F.3d at 243; *Dortch*, 199 F.3d at 202.

[15] *See Jenson*, 462 F.3d at 402-03; *Santiago*, 310 F.3d at 338-39; *Jones*, 234 F.3d at 237-38; *Dortch*, 199 F.3d at 195-96.

question whether Muniz's consent was voluntary or was the product of duress or coercion, express or implied, "is to be determined by the totality of all the circumstances and is a matter which the Government has the burden of proving."[16]

Voluntariness is determined by examining six separate factors: (1) the voluntariness of Muniz's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of Muniz's cooperation with the police; (4) Muniz's awareness of his right to refuse consent; (5) Muniz's education and intelligence; and (6) Muniz's belief that no incriminating evidence will be found.[17] The Government asserts, and Muniz does not contest, that Officer Tully returned Muniz's driver's license and provided a warning citation, that Officer Tully did not use any coercive police procedures, that Muniz cooperated with Officer Tully, and that the tone of the conversation was subdued. Under these circumstances, the district court's determination that Muniz's consent was voluntary was not clearly erroneous. Accordingly, the district court properly denied Muniz's motion to suppress the evidence obtained during the 2001 traffic stop.

## B

Muniz contends that the district court erred by failing to suppress the evidence gathered during the March 2007 search of Muniz's home because the magistrate judge signing the warrant could not have had a substantial basis for concluding that probable cause existed. "In considering a Fourth Amendment challenge to a seizure conducted pursuant to a search warrant, we ask first whether the seizure falls within the good-faith exception to the exclusionary

---

[16] *United States v. Mendenhall*, 446 U.S. 544, 557 (1980) (citation omitted).

[17] *Jenson*, 462 F.3d at 406.

rule."[18] If the good-faith exception applies, "we end our analysis and affirm the district court's decision to deny the motion to suppress."[19]

The Supreme Court has held that evidence obtained by officers in objectively reasonable good-faith reliance upon a search warrant is admissible, even though the warrant was unsupported by probable cause.[20] "Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued."[21] These circumstances include when (1) the issuing-judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," (2) the issuing-judge "wholly abandoned his judicial role" in such a manner that "no reasonably well trained officer should rely on the warrant," (3) the underlying affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or (4) the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid."[22]

Muniz contends that the good-faith exception is not available to Lieutenant Baxter because the warrant was based on an affidavit "so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable."[23] Muniz first argues that the information contained in the

---

[18] *United States v. Davis*, 226 F.3d 346, 350 (5th Cir. 2000).

[19] *United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999).

[20] *United States v. Leon*, 468 U.S. 897, 922 (1984).

[21] *Id.* at 922-923 (citation and footnotes omitted).

[22] *Id.* at 923.

[23] *Id.*

affidavit was stale.

While the temporal proximity of information in an affidavit affects the probable cause inquiry,[24] when "the information of the affidavit clearly shows a long-standing, ongoing pattern of criminal activity" this court is "more tolerant of dated allegations."[25] Baxter's affidavit included information gleaned over the six months he investigated Muniz before seeking a warrant. The warrant included information from two identified and five confidential informants who had dealings with Muniz involving the transportation and distribution of illicit drugs. Baxter's interviews of these informants occurred continuously over the six-month period, the latest of which was nine days before Baxter sought the search warrant. Based on the information provided by these informants alleging continuous drug activity by Muniz, the district court did not clearly err in determining that the information in the affidavit was not stale.

Muniz also argues that the affidavit lacked probable cause because the informants were unreliable. "There is no set requirement that all tips be corroborated by subsequent police investigation in order to be considered credible. Whether subsequent corroboration is necessary must be determined in the light of the totality of the circumstances presented by the particular set of facts."[26]

Baxter's affidavit included information describing both general and specific incidents of drug trafficking, details of which were corroborated by Baxter's own investigative efforts, fellow officers, or other informants. Based on

---

[24] *See United States v. Freeman*, 685 F.2d 942, 951 (5th Cir. 1982) ("Although probable cause may exist at one point to believe that evidence will be found in a given place, the passage of time may (without additional newer facts confirming the location of the evidence sought) render the original information insufficient to establish probable cause at the later time.").

[25] *United States v. Alvarez*, 451 F.3d 320, 332 (5th Cir. 2006) (quoting *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1130 (5th Cir. 1997)).

[26] *United States v. Blount*, 123 F.3d 831, 836 (5th Cir. 1997) (en banc).

the information provided by seven informants and Baxter's own investigation, the district court did not clearly err when it determined that Baxter's affidavit was not so lacking in indicia of probable cause as to render good-faith reliance on the warrant unreasonable. Accordingly, we conclude that the good-faith exception applies and that the district court properly denied Muniz's motion to suppress the evidence obtained during the March 2007 search of his home.

## III

Muniz argues that the district court erred in permitting the Government to cross-examine Muniz's best friend, Eric Ortega, and his girlfriend, Kayla Guajardo, regarding Muniz's prior arrests. Because Muniz objected to the questioning of Ortega, we review the district court's decision to permit Ortega's cross-examination for abuse of discretion.[27] There is a dispute as to whether Muniz's failure to object to the Government's cross-examination of Guajardo in the district court changes our standard of review from abuse of discretion to plain error. We decline to decide this issue because regardless of the standard applied, any error by the district court as to the cross-examination of Ortega or Guajardo was harmless.

"[O]nce a witness has testified concerning a defendant's good character, it is permissible during cross-examination to attempt to undermine his credibility by asking him whether he has heard of prior misconduct of the defendant which is inconsistent with the witness' direct testimony."[28] However, there are limits on this type of cross-examination. "First, the government must have a good faith factual basis for the alleged prior misconduct. Second, the incidents must be

---

[27] *United States v. Sumlin*, 489 F.3d 683, 688 (5th Cir. 2007).

[28] *United States v. West*, 58 F.3d 133, 141 (5th Cir. 1995) (quoting *United States v. Wells*, 525 F.2d 974, 976 (5th Cir. 1976)).

relevant to the trial."[29]

A review of the record reveals nothing in Muniz's direct examination of Ortega or Guajardo that provided grounds for the prosecutor to cross-examine them about Muniz's character. The defense's questioning of these witnesses focused solely on whether they had seen Muniz use or sell drugs. Neither Ortega nor Guajardo expressed an opinion about Muniz's character. The fact that Ortega and Guajardo had a special relationship with Muniz does not, on its own accord, open the door for the prosecution to cross-examine them about Muniz's prior offenses.

The prosecution's questions did not relate to any issue other than Muniz's character and fail the threshold inquiry under Federal Rule of Evidence 404(b).[30] Therefore, the prior incidents are not relevant to the trial and the district court erred in allowing the prosecution's line of questioning. However, after reviewing the entire record and the evidence against Muniz, we conclude that the jury would have returned a guilty verdict against Muniz even without the prejudicial testimony.[31] Accordingly, the error was harmless.

*     *     *

AFFIRMED.

---

[29] *Id.* (footnote omitted).

[30] *See Huddleston v. United States*, 485 U.S. 681, 685 (1988) (requiring courts to examine first whether character evidence under Rule 404(b) is probative of material issues other than character).

[31] *United States v. Hasting*, 461 U.S. 499, 508, 510-11 (1983) (noting that "there can be no such thing as an error-free, perfect trial" and denying reversal because the error was harmless beyond a reasonable doubt).