**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Will RENFRO, Defendant-Appellant.**

**No. 79–5457.**

United States Court of Appeals,
Fifth Circuit.

June 30, 1980.

---

G. A. Gafford, T. H. Freeland, III, Oxford, Miss., for defendant-appellant.

H. M. Ray, U. S. Atty., John R. Hailman, Asst. U. S. Atty., Oxford, Miss., for plaintiff-appellee.

Before GODBOLD, TJOFLAT and SAM D. JOHNSON, Circuit Judges.

SAM D. JOHNSON, Circuit Judge:

Will Renfro is a former defensive tackle for the Washington Redskins, Pittsburgh Steelers, Philadelphia Eagles, and New York Giants. On May 9, 1979, Renfro was involved in an incident with FBI Agent Wayne Tichenor. Renfro's actions produced an indictment and conviction for assaulting an FBI agent engaged in the performance of his official duties.[1] We affirm that conviction.

This case stems from an FBI investigation into alleged racketeering and acceptance of kickbacks by the five elected members of the DeSoto County Board of Supervisors. Defendant Renfro was a member of the County Board in May 1979 and Agent Tichenor was actively involved in the investigation into the County Board. On May 9, 1979, Agent Tichenor was in the DeSota County Courthouse interviewing clerks and reviewing county records for evidence against defendant Renfro. Shortly after noon, Tichenor left the chancery clerk's office on the second floor to interview another witness in the Renfro investigation. Within seconds of the agent's exit, employees in the clerk's office heard a loud noise in the hall. When they got to their office door, the employees saw Agent Tichenor lying on the floor with defendant Renfro on top of him.

The Government's position at trial was that Renfro, angered by the FBI investigation, picked Tichenor up and threw him to the floor. Only Agent Tichenor observed the assault. The prosecution did introduce, however, testimony from the courthouse employees who stated that they arrived in the hallway within seconds of the alleged assault. These witnesses testified that they saw Renfro on top of Tichenor holding him on the floor. One witness stated that it looked like Renfro had his hands around Tichenor's neck "choking him." Another witness said it appeared that Renfro was about to hit Tichenor.

The defendant's position at trial was that the agent accidentally slipped and fell on the sawdust covered floor. Renfro testified that had the events described by Agent Tichenor actually occurred, Tichenor would have been severely injured. Renfro contended that Tichenor was frustrated by his inability to obtain a conviction against any of the members of the DeSoto County Board of Supervisors, and was willing to lie about the accident in order to garner some type of conviction against one of the supervisors.

On July 11, 1979, after a two day trial, the jury returned a verdict finding the defendant guilty as charged. The district court entered judgment and ordered that Renfro be incarcerated for 18 months. Defendant then instituted this appeal, raising six procedural and evidentiary points of error.

PROCEDURAL POINTS OF ERROR

A. *The Discovery Order*

Prior to trial, defendant made a motion pursuant to F.R.Crim.P. 16 and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1962), requesting that the United States produce and permit defendant to inspect and copy a wide range of materials and evidence. The items requested in this motion included materials that the Government had compiled relating to the assault charge, and materials that the Government had obtained in its investigation into the defendant *in his capacity as a member of the Board of Supervisors of DeSoto County.*

Defendant presented this discovery motion to a federal magistrate prior to trial. He sought to justify discovery of materials from the investigation into his activities as

1. *See* 18 U.S.C. § 111.

a member of the Board of Supervisors on the ground that such information was needed to show Agent Tichenor's bias. After a full hearing, the magistrate ruled that Renfro could not examine the information from the investigation into his activities as a member of the Board of Supervisors. Defendant never appealed this order to the district court prior to trial. Defendant first raised the possibility that the magistrate erred in a post-trial motion.

■ 28 U.S.C. § 636(b)(1)(A) provides that a judge may request that a magistrate hear pre-trial matters pending before the judge, including discovery motions in criminal trials. Appeals from the magistrate's ruling must be to the district court. *United States v. Reeds,* 552 F.2d 170 (7th Cir. 1977) (per curiam). In the case at bar, while Renfro did appeal the magistrate's ruling to the district court, he did not do so until after trial. This delay deprived the trial judge of his ability to effectively review the magistrate's holding. In essence then, defendant is now appealing a magistrate's decision directly to this Court. The law is settled that appellate courts are without jurisdiction to hear appeals directly from federal magistrates. *Id.; United States v. Cline,* 566 F.2d 1220, 1221 (5th Cir. 1978); *United States v. Haley,* 541 F.2d 678 (8th Cir. 1974). Accordingly, this part of defendant's appeal must be dismissed.

### B. *The Jury Charge*

■ Defendant's final procedural point of error is his contention that the trial judge erroneously defined forcible assault in the jury charge. The charge defines forcible assault as:

> any willful threat or attempt to inflict bodily injury upon the person of another when coupled with an apparent present ability to do so, and includes any intentional *display of force such as would give the victim reason* to fear or expect immediate bodily harm (emphasis added). Defendant contends that this instruction was invalid because it required the jury to view the "fear" and "expectation of immediate bodily harm" from the stand-

point of the *victim.* Renfro argues that the proper charge for forcible assault should ask whether the intimidating actions "would have caused fear of injury to a *reasonable man.*" In *Shaffer v. United States,* 308 F.2d 654 (5th Cir. 1962) and *United States v. Marcello,* 423 F.2d 993 (5th Cir.), *cert. denied,* 398 U.S. 959, 90 S.Ct. 2172, 26 L.Ed.2d 543 (1970), this Circuit, in *dicta,* approved the instruction given by the district court. Defendant's arguments do not convince us that this twice-approved charge is now incorrect. This point of error is overruled.

### EVIDENTIARY POINTS OF ERROR

### A. *The Cross-Examination of Agent Tichenor*

During cross-examination, defense counsel sought to ask Agent Tichenor about his conversations with Lee Harris, Malcolm Harris, and William Harris (the Harris brothers) during the FBI investigation into the alleged racketeering and corruption in DeSoto County. Counsel sought to elicit testimony from Tichenor that he (Tichenor) had offered the Harris brothers immunity from prosecution for accepting payoffs if they would testify against Renfro and other members of the Board of Supervisors. The trial judge refused to allow this cross-examination. Defendant contends that this refusal limited his ability to establish Tichenor's bias and constitutes reversible error.

■ The trial judge based his decision to limit defendant's cross-examination on Federal Rule of Evidence 403. Rule 403 provides that a judge may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." A trial judge's determination that potential prejudice outweighs the probative value of evidence will be reversed by this Court only if the exclusion constitutes an abuse of discretion. *United States v. Authement,* 607 F.2d 1129 (5th Cir. 1979) (per curiam). In the case at bar, the trial court did not abuse its discretion.

■ The district court could reasonably have concluded that the evidence sought had minimal probative value. First, testimony from Agent Tichenor that he had offered the Harris brothers immunity would have, at best, only a slight tendency to establish bias. Second, to the extent that Tichenor's offer of immunity would indicate some bias, that bias was also established: (a) by testimony from Tichenor on cross-examination that he had been active in the FBI investigation into the alleged racketeering in DeSoto County for three years and (b) by questions posed to Tichenor on cross-examination asking whether he had ever said that the FBI had enough "on Will Renfro to hang him."

In examining the other side of this scale, the trial judge could reasonably have concluded that the potential prejudice posed by the evidence was substantial. Had the trial court allowed defense counsel to proceed with the proposed line of questioning, the Government would undoubtedly and understandably have sought to introduce evidence to rebut the defendant's allegation. In the end, the trial might have devolved into a lengthy dispute about the racketeering charges and the FBI's investigation into Renfro and other parties. Aside from wasting valuable time and judicial resources, such a clash would have operated to confuse and mislead the jury.

Defendant was being tried for assaulting an FBI agent. Although evidence of the agent's bias was relevant, the trial judge was reasonable in concluding that the prejudice posed by defense counsel's proposed line of questioning exceeded the probative value. *See e. g., Howell v. American Live Stock Insurance Co.*, 483 F.2d 1354 (5th Cir. 1973). We cannot say that the trial court abused its discretion.

### B. *The Introduction of Extrinsic Evidence*

Since the trial court refused to allow defense counsel to cross-examine Agent Tichenor about his offer of immunity to the Harris brothers, the defendant sought to call the brothers as witnesses. Defendant intended to elicit testimony from the Harris brothers that Tichenor was out to get the DeSoto County Board of Supervisors, and that he was determined to see them, Renfro included, in jail. Defendant contends that the trial court erred in refusing to allow the Harris brothers to testify.

A review of the record, however, indicates that *defense counsel* decided not to put the Harris brothers on the witness stand. The record reflects that defense counsel made this tactical decision after the Government stated that if the Harris brothers testified, it would introduce rebuttal evidence. The Government indicated that its rebuttal evidence would include five witnesses who were present at the interviews between the FBI and the Harris brothers. Apparently, all of the witnesses were willing to testify that Agent Tichenor never made any of the statements attributed to him.

In light of the Government's proposed rebuttal testimony, defense counsel chose not to call the Harris brothers to the stand. Defendant cannot now contend that the trial court erred in excluding this testimony. This point of error is overruled.

### C. *Specific Instance Testimony*

■ At trial, defendant called four character witnesses. These witnesses testified about defendant's good reputation for "honesty and integrity in the community" and for "peace and quiet in the community." On cross-examination, the Government asked the witnesses whether they had heard about specific prior instances when defendant Renfro acted dishonestly or violently. Defendant contends that the district court erred in allowing the Government to question the character witnesses about specific instances of alleged misconduct by Renfro.

In *United States v. Wells*, 525 F.2d 974 (5th Cir. 1976), this Court stated:

Once a witness has testified concerning a defendant's good character, it is permissible during cross-examination to attempt to undermine his credibility by asking him whether he has heard of prior misconduct of the defendant which is incon-

sistent with the witness' direct testimony . . . Courts have imposed two important limitations upon judicial discretion in admitting inquiries concerning such prior misconduct: first, a requirement that the prosecution have some good faith factual basis for the incidents inquired about [Citations omitted] and second, a requirement that the incidents inquired about are relevant to the character traits involved at the trial.

*Id.* at 976, 977. *See also United States v. Bynum*, 566 F.2d 914 (5th Cir. 1978). Defendant does not contend that the prosecution lacked a good faith factual basis for the incidents inquired about or that the incidents were not relevant to the character traits involved at the trial. Renfro's contention that the district court erred in allowing this line of questioning must be rejected.

### D. *Rebuttal Evidence*

■ Agent Tichenor, during the Government's case-in-chief, described and demonstrated by arm movements the actions that he and Renfro took during the assault. Defendant Renfro, during direct testimony, chose to completely re-enact his version of the assault. During rebuttal, the Government re-enacted its version of the assault in response to defendant's presentation. On appeal, defendant contends that the trial court abused its discretion in allowing the Government to present this second re-enactment.

■ The trial judge has the authority, within limits, to control the scope of rebuttal testimony. *Geders v. United States*, 425 U.S. 80, 86, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976). The trial judge did not abuse his discretion when he allowed the Government to re-enact the assault.

### CONCLUSION

The judgment entered by the district court is

AFFIRMED.

\* Fed.R.App.P. 34(a); 5th Cir. R. 18.