**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 94-20143

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

LARRY F. WEST, THOMAS L. MASSEY AND
RICHARD D. GATTEN, a/k/a DICK GATTEN,

Defendants-Appellants.

Appeals from the United States District Court
for the Southern District of Texas
(June 27, 1995)

Before WISDOM, DUHÉ, and BENAVIDES, Circuit Judges.

WISDOM, Circuit Judge.

The defendants were convicted of various charges based on their conspiracy to avoid federal excise tax. On appeal, all three defendants raise various challenges to their convictions and sentences. Because we find no error, we AFFIRM.

I.

The charges against the defendants arose from their involvement in a scheme to evade federal fuel excise taxes due on sales of gasoline. The tax is imposed when gasoline is sold by the wholesale distributor to any purchaser that does not hold a Registration for Tax-Free Transaction (IRS form 637). This IRS

form enables distributors to transfer gas between themselves tax-free.

The defendants, Larry West and Richard Gatten, operated a fuel distribution company known as Dispetco, which possessed a valid form 637. Dispetco purchased most of its fuel from Major Brand Oil (MBO), owned by Thomas Massey, the third defendant, who also possessed a valid form 637. Massey sold an unusually high volume of fuel to Dispetco at a very low cost. Because both of these companies possessed valid forms 637, the transactions between them were tax-free.

Dispetco then sold fuel to retailers under the names of other companies, ISO Oil or JA-OC Petroleum, in order to conceal the fact that Dispetco was the supplier. The invoices reflect that Dispetco would sell gas tax-free to one of these companies, then these companies would sell the gas with tax to retailers. In reality, Dispetco would sell the fuel with tax directly to retailers. The tax money collected by Dispetco from the retailers was not paid to the IRS. Dispetco drivers collected money from retailers for fuel delivered under invoices in the names of JA-OC, ISO, and others, and brought the cash to the Dispetco office.

Another company, General Distributors, owned by the defendant Gatten, applied for and was denied an IRS form 637. After the denial, a false form 637 was presented to Massey's company, MBO. MBO began selling gas tax-free to General Distributors immediately, though the authorization date on the false IRS form 637 did not permit such sales until weeks later.

The government contends that this discrepancy, as well as other deviations from standard business practice, incriminated Massey as a co-conspirator.  In addition, the government presented the testimony of Hillhouse, a former employee of West, who recounted statements West made to him that Massey was involved in the conspiracy and was receiving a portion of the illegal profits.[1] Massey testified extensively at trial and offered a plausible lawful explanation for his association with Dispetco and General Distributors.

Before trial, Massey sought a preliminary hearing to determine the existence of a conspiracy.  Massey contended that the out of court statement of a co-conspirator was the only evidence of his involvement, and that a separate hearing was required.  The district court denied Massey's motion.  West pressed a motion to dismiss based on pre-indictment delay.  The district court denied this motion as well.

At trial, IRS agent Jannett Reiner testified for the government as a summary witness.  Reiner traced all sales to retailers purporting to be from JA-OC, ISO, and other similar companies, back to Dispetco by using bills of lading and retailer invoices.  She computed that Dispetco owed the IRS $462,601.  West produced a psychologist who testified that West had a learning disability which affected his ability to read and write.  The psychologist admitted, however, that West's intellectual ability was "high average".

---

[1]     Record, volume 8 at 164-65.

In October 1993, after a nine-day jury trial, the defendants, Gatten, Massey, and West, were each convicted of one count of conspiring to defraud the United States by impeding, impairing, obstructing, and defeating the lawful governmental functions of the Treasury Department in the ascertainment, computation, assessment, and collection of federal gasoline excise taxes, in violation of 18 U.S.C. § 371. West and Gatten were also convicted of three counts of attempting to evade federal gasoline excise taxes, in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 2. The jury acquitted Massey on the substantive counts brought against him.

II.

A.   Defendant Harry West

   1.   Pre-indictment delay

Harry West was convicted of both conspiracy to defraud the United States and two counts of attempting to evade federal gasoline excise tax. On appeal, the defendant alleges that the district court erred when it failed to dismiss the indictment against him because of pre-indictment delay. Although West acknowledges that he was indicted within the five year statute of limitations period, West argues that the government's delay in initiating the prosecution against him caused substantial prejudice to his defense in violation of the Fifth Amendment.

As this Court recently noted in *United States v. Crouch*, "although the primary protection against undue delay prior to arrest, indictment, or information is the appropriate statute of

4

limitations, the Due Process clause of the Fifth Amendment offers some protection from prejudice to a defendant's case arising from this delay".[2]  Thus, a defendant who establishes a violation of Due Process may be entitled to have the indictment against him dismissed.   The defendant, however, bears the burden of establishing a violation of due process and, as a threshold matter, must establish that he suffered actual and substantial prejudice as a result of the government's delay.[3]

---

[2]     51 F.3d 480, 482 (5th Cir. 1995) (citing *United States v. Marion*, 404 U.S. 307 (1971)).

[3]     *Crouch*, 51 F.3d at 484; *United States v. Ballard*, 779 F.2d 287, 293 (5th Cir.), <u>cert. denied</u>, 475 U.S. 1109 (1986).  In *Crouch*, this Court noted that the second part of the due process analysis requires balancing the actual prejudice suffered by the defendant against the government's reason for the delay.  *Crouch*, 51 F.3d at 485.  The *Crouch* decision also surveyed this Court's previous decisions on the issue of pre-indictment delay and determined that, unlike what some decisions in this Court have held, a showing that the government delayed indictment in order to gain a tactical advantage is not required to establish a violation of the Fifth Amendment.  <u>Id.</u> at 483 (citing *United States v. Townley*, 556 F.2d 1312 (5th Cir. 1977) (construing *United States v. Lovasco*, 431 U.S. 783 (1977))).  Discussing the relevant precedent, this Court stated:

> [s]everal subsequent decisions overlooked *Townley*'s holding and relied on the dicta from pre-*Lovasco* cases for stating that pre-indictment delay may result in dismissal of an indictment only when the delay resulted from an ill-intentioned act by the government.  In accordance with our long-established rule, we are bound to follow the earliest dispositive articulation of a rule as the decision of one "panel may not overrule the decision, right or wrong, of a prior panel in the absence of en banc reconsideration or superseding decision of the Supreme Court."  We therefore must apply the *Brand/Townley* balancing test as the binding precedent.

<u>Id.</u>  In the instant case, however, we need not look beyond the threshold question of actual prejudice because the defendant bears

5

In this case, West argues that he suffered actual prejudice because Bryson, a potential witness and alleged co-conspirator, was murdered and was, therefore, unavailable to testify at trial. In addition, West alleges that the memories of unidentified witnesses faded and various records were lost. The defendant, however, does not identify specific evidence or testimony regarding a material fact that became unavailable because of the pre-indictment delay. Further, the defendant offered no evidence that Bryson's testimony was "exculpatory in nature and would have aided the defense".[4] Contrary to the defendant's arguments, "[v]ague assertions of lost witnesses, faded memories, or misplaced documents are insufficient to establish a due process violation from pre[-]indictment delay".[5] West has failed to meet his burden of establishing that he suffered actual prejudice because of the government's delay in pursuing an indictment. We, therefore, affirm the district court's refusal to grant the defendant's motion for a dismissal of the indictment.

2. Sentencing

On appeal, West challenges three aspects of his sentence. First, West argues that his offense level should not have been increased by four points under U.S.S.G. § 3B1.1(a) for his role in the offense. Although West concedes that some enhancement was

---

the burden of establishing that he incurred actual prejudice and West has failed to do so here.

[4] *United States v. Beszborn*, 21 F.3d 62, 66 (5th Cir.), cert. denied, 115 S.Ct. 330 (1994).

[5] Id. at 67.

appropriate, he argues that the evidence supports only a three-level increase under § 3B1.1(b). Second, West contends that U.S.S.G. § 3C1.1 should not have been applied to enhance his offense level by two points for obstruction of justice. Finally, West alleges that the criminal category assigned to him under U.S.S.G. §4A1.1(c) based on a previous conviction for possession of gambling paraphernalia was erroneous.

We review the application of the Sentencing Guidelines de novo.[6] And, we review the district court's findings of fact for clear error.[7] "Due deference is given to the district court's application of the guidelines to the facts."[8] And, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently".[9]

The Pre-sentence Investigation Report (PSI) concluded that a four-level increase in West's offense level was appropriate under § 3B1.1(a) because West "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive". This conclusion was based on West's

---

[6] *United States v. Brown*, 7 F.3d 1155, 1159 (5th Cir. 1993).

[7] *United States v. Sowels*, 998 F.2d 249, 251 (5th Cir. 1993), cert denied, 114 S.Ct. 1076 (1994).

[8] *United States v. Box*, 50 F.3d 345, 358 (5th Cir. 1995).

[9] *United States v. Bermea*, 30 F.3d 1539, 1575 (5th Cir. 1994), cert denied, 115 S.Ct. 1113 (1995), 115 S.Ct. 1825 (1995).

ownership of Dispetco. As detailed by the PSI, Dispetco would purchase gas tax-free from MBO based on its valid form 637. The gas was then sold to retailers with tax included but the tax was never remitted to the IRS.

West points to his employment as a truck-driver for Gatten at Gatson Oil, Inc. as well as to the testimony regarding his illiteracy and argues that he did not occupy a leadership role, but rather relied on the guidance of others involved, including Gatten. As detailed in the PSI, however, West was directly involved in concealing the transactions between Dispetco and the retailers by the use of fictitious company names and the preparation of false invoices. The PSI estimates that over 100 retailers were involved in Dispetco's activities. Clearly, the attempted concealment of these transactions required an established organization and a staff of truck drivers instructed by West on which type of invoice to use.

In the light of these facts, we cannot say that the district court was clearly erroneous when it determined that West occupied a leadership role and, therefore, a four-level enhancement was appropriate. We, therefore affirm the district court's enhancement of West's sentence under § 3B1.1(a).

Next, West argues that there is insufficient evidence to support the district court's determination that a two-level increase in West's offense level for obstruction of justice was warranted. U.S.S.G. § 3C1.1 provides for an enhancement when "the defendant willfully obstructed . . . the administration of justice

8

during the investigation, prosecution, or sentencing" of the underlying offense. This enhancement was based on the testimony of a special agent of the IRS at the post-trial detention hearing, as well as factual conclusions in the PSI, that West attempted to intimidate several witnesses and that he may have been involved in the murder of Bryson.[10]

West argues on appeal that since there was no direct testimony regarding his alleged intimidation of witnesses, § 3C1.1 should not have been applied to him. In addition, West argues that the testimony of Larry Noakes at trial regarding West's alleged involvement in Bryson's murder was disregarded by the district court at sentencing and cannot now be used to support the enhancement for obstruction of justice.

West is correct that at the sentencing hearing, the district court sustained West's objection to the use of Noakes' testimony to support the enhancement. The district court decided that since Noakes was unavailable and the district court had no opportunity to evaluate his credibility, West's allegation that he was an inherently unreliable witness would be accepted and Noakes' testimony would not be considered for sentencing purposes. Even without Noakes' testimony, however, there was sufficient evidence to support the enhancement for obstruction of justice under § 3C1.1.

_____

[10] The IRS agent's testimony appears in the Record, volume 16 at 27-47.

The IRS agent, Susan Wong,[11] testified that at least three government witnesses made allegations that West had threatened or intimidated them regarding their testimony. Agent Wong testified that:

> Several of the witnesses that testified at trial had indicated to us, or in fact told us, and also told the Grand Jury that they were in fear of their life, they were scared, one of the witnesses that testified in the trial was actually scared to come to the courthouse the day of the trial, the day it started--he-- without an agent accompanying him to the building, and staying with him at all times. We had to keep him pretty much out of sight on a different floor.[12]

At sentencing, the district court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy".[13] This Court has previously determined that for sentencing purposes, even "uncorroborated hearsay evidence" is sufficiently reliable.[14] In addition, a PSI "generally bears sufficient indicia of reliability to be considered by the trial

---

[11] Susan Wong is a special agent with the criminal investigation division of the IRS. Record, volume 16 at 28. Agent Wong was assigned as the case agent for the investigation of Larry West and his co-conspirators.

[12] Record, volume 16 at 29.

[13] U.S.S.G. § 6A1.3; see e.g., *United States v. Scott*, 48 F.3d 1389, 1395 (5th Cir. 1995); *Bermea*, 30 F.3d at 1576; *United States v. Smith*, 13 F.3d 860, 863 n.5 (5th Cir.), cert. denied, 114 S.Ct. 2151 (1994).

[14] *United States v. Golden*, 17 F.3d 735, 736 (5th Cir. 1994).

court as evidence in making the factual determinations required by the sentencing guidelines".[15]

In this case, the district court had before it sufficient competent evidence to indicate that a sentence enhancement for obstruction of justice was warranted. West's contention that testimony regarding the statements of others cannot be used to support the enhancement is not correct. We find no error in the district court's decision to credit the testimony of Agent Wong and accept the factual conclusions of the PSI. We, therefore, affirm the enhancement of West's sentence for obstruction of justice.

Finally, West contends that a prior misdemeanor conviction for possession of gambling paraphernalia in Texas should not have been considered in determining his criminal history category. Under U.S.S.G. § 4A1.2(c), a prior misdemeanor conviction is considered in determining a defendant's criminal history category unless it is an exempted offense or similar to one of the exempted offenses listed in the Sentencing Guidelines. These excluded offenses, and any similar offenses, are only considered in determining a defendant's criminal history category if the sentence was at least one year in prison or thirty days probation or if the prior offense is similar to the offense for which the defendant is currently being sentenced.

§ 4A1.2(c)(1) lists "gambling" as one of the excluded offenses. West argues that possession of gambling paraphernalia is

_____

[15]    *Bermea*, 30 F.3d at 1575; <u>see also</u>, *United States v. Valencia*, 44 F.3d 269, 274 (5th Cir. 1995).

similar to the offense of gambling and, therefore, his prior offense should be considered an excluded offense. If possession of gambling paraphernalia is found to be similar to the offense of gambling, this prior misdemeanor conviction would not be considered because West's sentence was only three days imprisonment and the prior offense is not similar to the current offenses of tax evasion. Thus, the issue is whether the offense of possession of gambling paraphernalia is similar to the offense of gambling under U.S.S.G. §4A1.2.

In *United States v. Hardeman*, this Court set up a "common sense" approach to determine whether a prior offense is similar to an exempted offense.[16] We determined that "all possible factors of similarity" should be considered, including:

> a comparison of punishments imposed for the listed and unlisted offenses, the perceived seriousness of the offense as indicated by the level of punishment, the elements of the offense, the level of culpability involved, and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.[17]

We engage in an analysis of these factors while keeping in mind that § 4A1.2(c) "is designed to take into account the seriousness of the past offense and the degree to which it suggests the possibility of future criminality".[18]

---

[16] 933 F.2d 278, 281 (5th Cir. 1991). See e.g., *United States v. Gadison*, 8 F.3d 186 (5th Cir. 1993); *United States v, Moore*, 997 F.2d 30 (5th Cir.), cert. denied, 114 S.Ct. 647 (1993).

[17] *Hardeman*, 933 F.2d at 281.

[18] Id.

12

As noted by the district court, Texas law defines possession of gambling paraphernalia as a class A misdemeanor with a possible fine of up to $3000 and a prison term of up to one year.[19]  Gambling, on the other hand, is defined as a class C misdemeanor with the possibility of a fine of up to $500 and no possibility of imprisonment.[20]  The elements of gambling require only that the accused placed a bet while possession of gambling paraphernalia requires proof of "intent to further gambling".[21] Thus, Texas law defines possession of gambling as a more serious offense with a more serious punishment.  Further, the crime of gambling apparently targets individuals who place illegal bets while possession of gambling paraphernalia seems to target individuals who  make these illegal activities available to others.

In the light of the more serious punishment and higher level of culpability required for possession of gambling paraphernalia, we agree with the district court that West's offense

---

[19]    Record, volume 17 at 8-9.

[20]    Id.

[21]    The offense of gambling is defined at Texas Penal Code §47.02, which states that:
> a person commits an offense if he makes a bet
> on the partial or final result of a game or
> contest . . . [or] on the result of any
> political nomination, appointment, or election
> . . .[or] plays and bets for money . . . at
> any game played with cards, dice, balls, or
> any other gambling device . . . .

Texas Penal Code §47.06 defines the offense for which West was convicted and states that: "[a] person commits an offense if, with the intent to further gambling, the person knowingly owns, manufactures, transfers commercially, or possesses gambling paraphernalia".

13

is not similar to gambling under § 4A1.2. Under the Sentencing Guidelines, West's prior conviction should be included in determining his criminal history category. We, therefore, reject West's argument and affirm the district court's inclusion of West's prior conviction for possession of gambling paraphernalia in relevant conduct used to determine his sentence.

B.   Defendant Richard Gatten

Like West, Richard Gatten was convicted of both conspiracy to defraud the United States and two counts of attempting to evade federal gasoline excise tax. On appeal, he contends that the government's summary witness, Jannett Reiner, was not qualified to testify as an expert. Also, Gatten argues that the district court erroneously permitted Reiner to bolster the testimony of a key prosecution witness, Ray Long, by referring to and restating certain portions of Long's testimony. In response, the government argues that Reiner is fully qualified to testify as an expert witness on matters of accounting and evasion of excise tax. The government also contends that the purpose of Reiner's restatement of Long's testimony was to identify the evidence upon which she based her calculations of tax due, as is appropriate for a summary witness.

Federal Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

14

The district court is given wide discretion to admit or to exclude expert testimony.[22] We review its decision for manifest error.[23] "To qualify as an expert, the witness must have specialized knowledge or training such that his or her testimony will assist the fact finder in the determination of a fact issue."[24]

In this case, agent Reiner testified regarding her training and experience.[25] Reiner holds a Bachelor of Science in accounting.[26] At the time of trial, she had served the IRS for seven years as a revenue agent, during four of which she acted as an excise tax specialist.[27] Agent Reiner received general training when she started as a revenue agent and participated in additional training in order to specialize in the area of excise tax.[28] In addition, agent Reiner participates in annual continuing education in the areas of both general tax and excise tax.[29]

In the light of agent Reiner's background, we cannot say that the district court committed manifest error when it admitted the testimony of agent Reiner as a summary expert. She has

---

[22] *London v. Mac Corporation of America*, 44 F.3d 316, 318 (5th Cir. 1995); *Moore*, 997 F.2d at 57.

[23] *London*, 44 F.3d at 318; *Moore*, 997 F.2d at 57.

[24] *United States v. Townsend*, 31 F.3d 262, 270 (5th Cir. 1994), cert. denied, 115 S.Ct. 773 (1995).

[25] Record, volume 11 at 134-35.

[26] Id.

[27] Id.

[28] Id.

[29] Id.

15

specialized training and experience which made her adequately suited to assist the jury in understanding the large amount of documentary evidence presented by the government and the tax implications. We, therefore, reject Gatten's argument and affirm the district court's decision to admit agent Reiner as an expert.

Gatten also argues that agent Reiner should not have been allowed to restate the testimony of Ray Long because by doing so, she impermissibly affected the jury's assessment of Long's credibility. That is, agent Reiner's testimony bolstered and confirmed Long's damaging testimony against the defendants. The government, in response, points out that it is the purpose of a summary witness to reference other evidence in order to identify the evidence used in determining the amount of taxes evaded.[30]

This Court addressed an argument similar to the one pressed here by Gatten in *United States v. Moore*.[31] In *Moore*, four defendants convicted on various charges surrounding the preparation of false tax returns argued that by repeating only damaging testimony, the expert summary witness of the IRS had "impermissibly made implicit credibility choices for the jury".[32] This Court

---

[30] In addition, the government cites the district judge's instruction to the jury regarding agent Reiner's role as a summary witness. In response to an objection by the defense, the judge stated that: "[t]he jury is going to have to consider its own recollection of the testimony. This is the agent's assessment of the testimony for purposes of demonstrating the figures she's computed." Record, volume 11 at 142.

[31] 997 F.2d 55 (5th Cir.), cert. denied, 114 S.Ct. 647 (1993).

[32] Id. at 59.

16

rejected that argument because the IRS agent merely recited factual information and made no express comments regarding the credibility of the witnesses.[33]  We held that admission of the IRS expert's testimony, which included a summary of testimony given by other government witnesses, was not error because the agent properly referenced other evidence when necessary to explain his analysis of the case.[34]

The circumstances are the same in this case.  Agent Reiner referred to Long's testimony while in the process of explaining how the defendants attempted to conceal the sales transactions between Dispetco and the retailers.[35]  The testimony of Long and others was used by the agent to explain the basis of her findings and calculation of the taxes owed.  She made no comment regarding Long's credibility.  In addition, the judge reminded the jury that agent Reiner's role was to summarize evidence in order to explain the tax liability evaded by the defendants.[36]  In these circumstances, the district court did not err in admitting the summary testimony of agent Reiner.

---

[33]    Id.  (citing *United States v. Price*, 722 F.2d 88 (5th Cir. 1983)).

[34]    Id.  The summary expert's testimony is also limited by Federal Rule of Evidence 704.  See, *United States v. Townsend*, 31 F.3d 262 (5th Cir. 1994), cert. denied, 115 S.Ct. 773 (1995).

[35]    Record, volume 11 at 140, 142.

[36]    In response to an objection by the defense, the judge stated that: "[t]he jury is going to have to consider its own recollection of the testimony.  This is the agent's assessment of the testimony for purposes of demonstrating the figures she's computed."  Record, volume 11 at 142.

17

C. Defendant Thomas Massey

1. Admission of Specific Instance Testimony

Massey argues on appeal that the district court erred when it ruled that the government could cross-examine the character witnesses that Massey intended to call with "have you heard" questions regarding Massey's indictment on state charges similar to the federal charges that are the basis of his conviction. Under Federal Rule of Evidence 405(a), cross-examination of a witness offering character evidence can include questions regarding relevant, specific instances of conduct by the defendant. Thus, "[o]nce a witness has testified concerning a defendant's good character, it is permissible during cross-examination to attempt to undermine his credibility by asking him whether he has heard of prior misconduct of the defendant which is inconsistent with the witness' direct testimony".[37]

There are two limits on this type of cross-examination. First, the government must have a good faith factual basis for the alleged prior misconduct.[38] Second, the incidents must be relevant to the trial.[39] Massey concedes that the government had more than a good faith factual basis but argues that the state charges are

_____

[37] *United States v. Wells*, 525 F.2d 974 (5th Cir. 1976).

[38] *Wells*, 525 F.2d at 977; see also, *United States v. Luffred*, 911 F.2d 1011, 1016 (5th Cir. 1990); *United States v. McCollom*, 664 F.2d 56, 58 (5th Cir. 1981), cert. denied, 456 U.S. 934 (1982); *United States v. Renfro*, 620 F.2d 497, 501-02 (5th Cir.), cert denied, 449 U.S. 921 (1980).

[39] *Wells*, 525 F.2d at 977; *Luffred*, 911 F.2d at 1016; *McCollom*, 664 F.2d at 58; *Renfro*, 620 F.2d at 497.

18

not relevant to his veracity, the character trait about which his character witnesses were to testify. This argument is without merit. An indictment alleging intentional evasion of state gasoline taxes is relevant to an inquiry into Massey's capacity for honesty. The district court was not in error when it stated that the government would be allowed to cross-examine character witnesses regarding the pending state charges as is specifically allowed by Rule 405(a). In addition, the district court's refusal to hold a separate hearing on this issue was not an abuse of its discretion in matters of the admission of evidence. We affirm.

2. Admission of Hearsay Evidence under FRE 801(d)(2)(e)

Massey also argues that the admission of the testimony of the government's witness, Hillhouse, recounting statements made by West regarding Massey's involvement in the conspiracy without the benefit of a hearing to determine the existence of the conspiracy, was an abuse of discretion. Massey concedes that West's out-of-court statements to Hillhouse are not hearsay under Federal Rule of Evidence 801(d)(2)(E),[40] but argues that he was entitled to a hearing to determine the existence of the conspiracy under *United States v. Bourjaily*.[41]

---

[40] Federal Rule of Evidence 801(d)(2)(E) provides

> A statement is not hearsay if--
> (2) the statement is offered against a party and is (E) a statement by a coconspirator of a party during the course or in furtherance of the conspiracy.

[41] 483 U.S. 171 (1987).

19

In *United States v. Fragoso*,[42] this Court rejected a similar argument and, in response to the defendant's argument that *Bourjaily* required a hearing, stated "[w]e think this argument erroneously transforms a descriptive portion of the Court's opinion in *Bourjaily* into a mandatory procedure. *Bourjaily* did not purport to address the procedure for proving the admissibility of a co[-]conspirator statements."[43] Thus, contrary to Massey's argument, no hearing is required and the district court was free to allow admission of the testimony before making its determination of whether the testimony fit within Rule 801(d)(2)(E).[44] And, although the district court did not make specific findings regarding the existence of the conspiracy, "[i]n denying the defendant's motion for directed verdict of acquittal at the close of the trial, the court implicitly found the evidence sufficient to establish a conspiracy".[45] Thus, we affirm.

### 3. Sufficiency of the Evidence

Finally, Massey argues that the evidence was insufficient to support his conviction for conspiracy to evade federal excise taxes. We must determine whether, viewing the evidence in the light most favorable to the jury's verdict, "a rational jury could have found the essential elements of the offense beyond a

---

[42] 978 F.2d 896 (5th Cir. 1992), cert denied, 113 S.Ct. 1664 (1993).

[43] Id. at 900.

[44] Id. at 900-01; *United States v. Ruiz*, 987 F.2d 243, 246 (5th Cir.), cert. denied, 114 S.Ct. 163 (1993).

[45] *Fragoso*, 978 F.2d at 901.

reasonable doubt".[46]  In reviewing the evidence supporting the conviction:

> It is not necessary that the evidence exclude every rational hypothesis of innocence or be wholly inconsistent with every conclusion except guilt, provided a reasonable trier of fact could find the evidence establishes guilt beyond a reasonable doubt.  We accept all credibility choices that tend to support the jury's verdict.[47]

In this case, the government presented evidence that Massey sold a high volume of fuel to Dispetco at a very low cost. In addition, when West purchased Dispetco and began his scheme to evade federal excise tax, sales from MBO to Dispetco increased dramatically.  As Massey points out, however, all the sales transactions between MBO and Dispetco or General Distributors were legal because both Dispetco and General Distributors held a form 637.[48]  The government also presented the testimony of Hillhouse who recounted statements by West that Massey was in on the conspiracy and was receiving a portion of the illegal profits.  Massey, in turn, testified at the trial that he had no knowledge of the conspiracy and did not knowingly receive any illegal proceeds from the scheme.

The evidence presented by the government is minimal. There was, however, direct testimony of Massey's involvement by

---

[46]  *United States v. Ragan*, 24 F.3d 657, 659 (5th Cir. 1994); *United States v. Pofahl*, 990 F.2d 1456, 1467 (5th Cir.), <u>cert. denied</u>, 114 S.Ct. 266, 114 S.Ct. 560 (1993).

[47]  *Pofahl*, 990 F.2d at 1467.  (citations omitted).

[48]  Dispetco held a valid form 637 while General Distributors presented MBO with a forged form 637.

Hillhouse, a close associate of West. Massey attempted to rebut this evidence with his own testimony that he was innocent of any wrong-doing. The jury had the power to weigh the credibility of these witnesses. Based on the evidence presented, a reasonable jury could have found Massey guilty beyond a reasonable doubt. We, therefore, affirm Massey's conviction.

III.

Since we find no error, we AFFIRM the convictions of all three defendants and West's sentence.