[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-11223

Non-Argument Calendar

_____

CHRISTOPHER J. SHAW,

Plaintiff-Appellant,

versus

CALHOUN STATE PRISON, et al.,

Defendants,

SGT. FNU SPENCER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 1:17-cv-00080-LAG-TQL

_____

Before JORDAN, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

Christopher Shaw, proceeding *pro se*, filed a complaint against prison guard Antwanette Spencer, among others, alleging that Spencer used excessive force against him in violation of the Eighth Amendment. Shaw argues that the district court erred by granting summary judgment for Spencer on his claim under 42 U.S.C. § 1983. Shaw also challenges the magistrate judge's various non-dispositive, discovery-related orders. Because we lack jurisdiction to review Shaw's challenge to the magistrate's discovery-related orders and Spencer's handcuffing did not exceed *de minimis* force, we dismiss in part and affirm in part.

## I.

Shaw is an inmate at Calhoun State Prison. The incident began with a verbal exchange between Shaw, who was incarcerated in a dormitory style cell with other inmates, and Spencer. While Spencer was outside the cell, Shaw shook the cell door and told Spencer that he wanted "[t]o eat." Spencer replied, "[y]ou're not eating." Shaw shook the door again. Spencer said, "[s]hake that door again." When Shaw did, Spencer screamed at the inmates and

threatened to spray them with pepper spray. Shaw then said, "I can't believe this bitch is not going to let us eat." Spencer ordered Shaw to come with her, and he refused. Spencer left for her shift change without further engaging Shaw.

At 2:00 A.M. the following morning, Spencer returned to the cell and beat her radio against Shaw's bunk to wake him up. She stated, "[t]he bitch is here. Get down and cuff up." Another officer, Eddie Smith, was present. Shaw jumped down from his bunk and allowed Spencer to place cuffs on his wrists as ordered. Shaw told Spencer that the handcuffs were too tight. Spencer ordered Shaw to be quiet and move.

After Shaw was escorted outside, Spencer clamped down on the handcuffs, and "e[x]cruciating pain seared from [his] wrist to [his] elbows." Spencer lifted the handcuffs up, causing Shaw to fall on the ground. Spencer ordered Shaw to get up and pulled him up by the handcuffs. Smith intervened, helped Shaw up, removed the handcuffs, and reapplied them.

The record contains several exhibits that Shaw attached to his second amended complaint, including a use of force assessment, an incident report, and a photograph of Shaw's wrist and forearm. The use of force assessment reflected that, although Shaw had complained of the handcuffs being too tight, he had no injuries, and no follow-up was needed. The assessment noted that he had redness around his right wrist but no broken skin.

In the incident report, Shaw stated that Spencer had tested the handcuffs by sticking her finger inside the loop of the cuffs and said, "the cuffs were not tight." The report also stated that Shaw said, "I'm going to get you for this" and began to yell that the handcuffs were too tight. Further, the photographs show that Shaw's forearm appeared swollen. Spencer also filed an answer that included, among other defenses, the defense that any force she used was *de minimis*.

After discovery, Shaw moved to stay the filing of dispositive motions so he could "continue to confer with defendant to collect discovery." He asserted that Spencer had improperly responded to his requests for production. Spencer replied that she responded to discovery completely and in good faith. She attached Shaw's requests and her responses and objections. Shaw also filed a "request for approval to request disclosure from a third party," the Georgia Department of Corrections.

A magistrate judge denied Shaw's motions to stay the filing of dispositive motions and for third-party disclosure. Regarding the former motion, the magistrate noted Spencer had responded to Shaw's discovery requests and that Shaw had not moved to compel Spencer's discovery responses. As to the latter, the magistrate explained that the discovery period had expired.

Shaw then filed a motion, and an amended motion, for a reasonable delay in proceedings pursuant to Rule 56(d). He contended that he needed more time to subpoena the Georgia Department of Corrections to obtain color photographs of his wrists. Shaw

maintained that color photographs would show that he had deep indentations around his wrists, that Spencer did not and could not have tested the tightness of the handcuffs by sticking her fingers between them and Shaw's wrist, and that his injuries were improperly documented. He also argued that, although the Georgia Department of Corrections told him that the investigative file was classified, it was already part of the record. Thus, Shaw argued that the Georgia Department of Corrections, by either concealing evidence or the investigative file's presence in the record, had violated Georgia law and the investigative file had to be stricken from the record. Shaw also filed a "request for proof of official record," asking for a determination of the investigative file's legal status under Georgia law.

The magistrate denied these three motions as well, reasoning that Shaw had failed to show why he could not present facts essential to oppose Spencer's motion for summary judgment without the color photographs. The magistrate allowed Shaw twenty-one days to file any other materials, affidavits, or declarations concerning the color photographs. In his response to the magistrate's order, Shaw stated he "presume[d]" that the magistrate was not seeking "additional briefing" as to his Rule 56(d) motions and motion for proof of official record. He also argued that Spencer was fabricating and concealing evidence and that the Department of Corrections had manipulated the grievance process.

After discovery, Spencer moved for summary judgment. She principally asserted that Shaw failed to show a violation of the Eighth Amendment because the force she used was *de minimis*.

Shaw responded that the district court should deny Spencer's motion because the undisputed evidence showed Spencer's use of force was excessive. He attached an affidavit to his response. In his affidavit, Shaw stated that he complained multiple times about the tightness of the handcuffs, but Spencer squeezed on them and lifted, causing Shaw to fall to the ground and experience excruciating pain. When she told him to get up and he could not, she lifted him by the chains of the handcuffs, causing more pain. He had deep indentations around one of his wrists, and his hands were discolored. One of his wrists had a burning pain for two days.

The magistrate recommended that the district court grant Spencer's motion for summary judgment. Among other conclusions, the magistrate determined that Shaw's minor injuries did not support a finding of more than a *de minimis* use of force. Shaw objected to the magistrate's conclusion that Spencer used no more than *de minimis* force. The district court adopted the magistrate's recommendation based on the magistrate's conclusion.

Shaw timely appealed the non-dispositive discovery related orders issued by the magistrate as well as the district court's order granting Spencer's motion for summary judgment.

## II.

Shaw raises two arguments on appeal. First, Shaw contends the magistrate erred in denying his discovery-related motions. Second, Shaw argues the district court erred in granting summary judgment because Spencer applied excessive force by handcuffing Shaw too tightly. We address each in turn.

### A.

We turn first to Shaw's contention that the magistrate improperly denied his discovery-related motions. Shaw challenges (1) the magistrate's order denying his motions to stay the filing of dispositive motions and for third-party disclosure and (2) the magistrate's order denying his motions for a stay of proceedings pursuant to Rule 56(d), and for proof of official record pursuant to Rule 44. Shaw also argues that the magistrate should have treated these motions as motions to compel discovery, even though Shaw never filed one. But Shaw objected to neither order, and, therefore, we lack jurisdiction to review the challenge.

Section 636 of Title 28 of the U.S. Code provides that a district judge may designate a magistrate to hear certain non-dispositive pretrial matters pending before the district judge. *See* 28 U.S.C. § 636(b)(1)(A). Federal Rule of Civil Procedure 72 provides that, when a non-dispositive pretrial matter is referred to a magistrate, "[a] party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to." Fed. R. Civ. P. 72(a).

When a magistrate rules on a pretrial matter pursuant to Section 636(b)(1)(A), "[a]ppeals from the magistrate's ruling must be to the district court," and we lack jurisdiction to hear appeals "directly from federal magistrates." *United States v. Renfro*, 620 F.2d 497, 500 (5th Cir. 1980).[1] We have applied *Renfro* in cases when a magistrate issues a non-dispositive order, a party fails to object to the order, and the same party subsequently appeals from the final judgment. *United States v. Schultz*, 565 F.3d 1353, 1359–62 (11th Cir. 2009). Further, we are "obligated to address jurisdictional questions *sua sponte* whenever jurisdiction may be lacking." *Reaves v. Sec'y, Fla. Dep't. of Corr.*, 717 F.3d 886, 905 (11th Cir. 2013) (quotation marks omitted).

Although neither party raised the jurisdictional issues created by Shaw's non-objection to the magistrate's order, we cannot entertain an appeal over which we do not have jurisdiction. *Id.* Because Shaw failed to object to the magistrate's orders, we need not, and indeed cannot, address the merits of Shaw's arguments. Accordingly, Shaw's appeal of the magistrate's orders is dismissed.

### B.

Shaw argues that the undisputed evidence established that Spencer's use of force was excessive and that the district court

---

[1] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions the former Fifth Circuit rendered prior to October 1, 1981.

therefore erred in granting Spencer's motion for summary judgment. We disagree and conclude that Spencer's use of force did not exceed *de minimis*, and therefore permissible, force.

We review *de novo* a district court's grant of summary judgment, using the same legal standards applied by the district court. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1263 (11th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant has met this burden, courts must view the evidence in the light most favorable to the non-movant. *Alvarez*, 610 F.3d at 1263–64. Nevertheless, courts "may not weigh conflicting evidence or make credibility determinations of [their] own." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016) (quotation marks omitted). Moreover, unsupported factual allegations, affidavits based on information and belief instead of personal knowledge, and mere conclusions cannot withstand a motion for summary judgment. *Ellis v. England*, 432 F.3d 1321, 1327 (11th Cir. 2005).

When a movant has shown that no genuine dispute of material fact exists, the burden shifts to the non-movant to show that there is a genuine issue of material fact that precludes summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The non-movant must go beyond the pleadings and present competent evidence that specific facts create a genuine issue. *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004).

We liberally construe *pro se* pleadings. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). "Federal courts are obligated to look beyond the label of a *pro se* inmate's motion to determine if it is cognizable under a different statutory framework." *United States v. Stossel*, 348 F.3d 1320, 1322 n.2 (11th Cir. 2003). Liberal construction has its limits, however. For example, we have cautioned that "even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quotation marks omitted).

Even taking the facts in the light most favorable to Shaw, the record does not present a material dispute about whether Spencer's conduct violated the Eighth Amendment. The Eighth Amendment "prohibits the unnecessary and wanton infliction of pain." *Thomas v. Bryant*, 614 F.3d 1288, 1303 (11th Cir. 2010) (quotations omitted). Under this standard, a use of "force is deemed legitimate in a custodial setting if it is 'applied in a good-faith effort to maintain or restore discipline' and not 'maliciously and sadistically to cause harm.'" *Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

To determine whether force was used "maliciously and sadistically," we consider: (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of the injury inflicted upon the prisoner"; (4) "the extent of the threat to the safety of staff and inmates"; and

(5) "any efforts made to temper the severity of a forceful response." *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007) (quotation marks omitted).

Further, the Eighth Amendment's prohibition of 'cruel and unusual' punishments excludes "'*de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010) (quoting *Hudson*, 503 U.S. at 9). Accordingly, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9.

The district court did not err by granting summary judgment. The magistrate properly considered the undisputed evidence in the light most favorable to Shaw and correctly applied the excessive force factors. As a result, the magistrate concluded that although the first two factors suggested that the use of force was unwarranted, Spencer's actions did not rise to the level of excessive force because of the limited amount of force and the minimal injuries that resulted from it.

We cannot hold that Spencer's use of force was anything but *de minimis* for two reasons.

First, Shaw's injuries, which the record establishes were limited to bruising, indicate that the amount of force that Spencer used was *de minimis*. *See Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000) (defendant's use of force caused only minor bruising which

quickly disappeared without treatment and was therefore *de minimis*).

Second, Spencer's use of force was not excessive based on the reason for the use of force. The uncontroverted facts are that Shaw was being moved to isolation for a disciplinary violation. Spencer applied force to implement Shaw's transfer to isolation. Even viewing the facts in the light most favorable to Shaw—Spencer applying the handcuffs too tightly causing him to fall and picking Shaw up by the handcuffs after he fell—does not indicate Spencer's use of force was excessive. *See Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997) (holding that handcuffs applied in a manner that caused skin abrasions constituted "minimal force" and was not excessive). As Shaw does not contend that this *de minimis* use of force was "repugnant to the conscience of mankind[,]" *Wilkins*, 559 U.S. 37–38 (quotation omitted), we cannot hold that the district court erred in granting summary judgment.

Accordingly, we affirm the district courts granting of Spencer's motion for summary judgment.

**AFFIRMED IN PART, DISMISSED IN PART.**